[No: 6811.   Decided October 10, 1907.]

THE CITY OF SEATTLE, *Appellant*, v. RAY MACDONALD, *Respondent*.[1]

MUNICIPAL CORPORATIONS—ORDINANCES—SUPERSEDING BY STATE LAW—CRIMINAL LAW—OFFENSES—GAMING. A city ordinance making gambling a misdemeanor is not superseded by a general state law making the acts defined in the ordinance a felony.

GAMING—DESCRIPTION OF OFFENSE. An ordinance prohibiting many specific gambling games, and in general terms any game of chance for money whether or not of the kind mentioned, is broad enough to include the game of "twenty-six" although not enumerated.

Appeal from a judgment of the superior court for King county, Frater, J., entered December 22, 1906, upon sustaining a demurrer to the complaint, dismissing a proceeding on appeal from a justice court and quashing a conviction of gambling in violation of an ordinance. Reversed.

*Ellis DeBruler*, for appellant.

*Morris, Southard & Shipley*, for respondent.

FULLERTON, J.—On November 17, 1899, the city of Seattle passed an ordinance relating to misdemeanors, § 23 of which reads as follows:

"Whoever deals, plays at, wagers anything of value on, or in any manner takes part in, or whoever carries on or causes to be opened, or who conducts, sets up, keeps or exhibits any game of faro, monte, roulette, lans-quenette, rouge et noir, rondo, poker, draw-poker, keno or E. O. or roulette table or shuffle board, or fan tan, or any gaming table or game whatever, for the purpose of gambling or any game of chance for the purpose of winning or securing money by chance, played with cards, dice or any device whatever, kind or nature, whether or not of the kind, character or nature herein mentioned for money, checks, credit or any representative of

[1]Reported in 91 Pac. 952.

value whatever, or whoever shall have in his possession to be used for the purpose of gambling or winning money by chance any gaming device whatever, shall be punished by a fine of not more than five hundred dollars, or by imprisonment not exceeding six months, or by both." Ordinance, No. 5657, § 23, Seattle Revised Ordinances, p. 242.

On March 7, 1903, the legislature made it a felony to maintain a gambling resort; the act consisting of one section, which reads as follows:

"Section 1. Any person who shall conduct, carry on, open, or cause to be opened, either as owner, proprietor, employee, or assistant, or in any manner whatever, whether for hire or not, any game of faro, monte, roulette, rouge et noir, lansquenette, rondo, vingt-un (or twenty-one), poker, draw-poker, brag, bluff, thaw, tan, or any banking or other game played with cards, dice or any other device, or any slot machine, or other gambling device, whether the same be played or operated for money, checks, credits, or any other representative or thing of value, in any house, room, shop, or other building whatsoever, boat, booth, garden or other place, where persons resort for the purpose of playing, dealing or operating any such game, machine or device, shall be guilty of a felony, and upon conviction thereof shall be imprisoned in the penitentiary for the period of not less than one nor more than three years." Laws 1903, p. 63, § 1.

On October 17, 1906, one W. I. Peer made complaint before the police judge of the city of Seattle charging the respondent with violating the ordinances above quoted, by playing at a dice gambling game called "twenty-six," for the purpose of winning money, cigars, and articles representative of money, by chance. The respondent pleaded not guilty to the charge before the police judge, and was tried and convicted and sentenced to pay a fine. The respondent appealed from the judgment of conviction to the superior court. In that court he filed a demurrer to the complaint on the ground, among others, that the facts charged did not constitute a crime. The superior court sustained the demurrer,

and entered a judgment quashing the conviction and dismissing the proceeding.    The city appeals.

The learned judge of the superior court sustained the demurrer on the ground that the city ordinance, on which the complaint was predicated, had been superseded by the statute above quoted.    He rested his decision on the principle that a municipality, in the absence of express authority conferred upon it by its charter, is without power to enact an ordinance making punishable an act which is made punishable as a criminal offense by the general laws of the state; and held, as a necessary corollary to that rule, that an ordinance making the doing of an act an offense, enacted by virtue of the municipalities general power, is superseded by a general law of the state legislature fixing and defining a punishment for the same act.

There are many cases, representing perhaps the weight of authority, which support the rule followed by the trial judge. This court, however, has adopted the contrary rule.    In *Seattle v. Chin Let*, 19 Wash 38, 52 Pac. 324, we held that the city of Seattle by virtue of certain provisions contained in its then charter, which have been continued in its present one, authorized it to enact ordinances for the punishment of offences already made punishable by state laws.    This rule is not without well-considered cases in its support, and, as we think it more in consonance with the principles of good government than is the rule followed by the trial judge, we do not feel that it ought to be overruled or modified.    We hold, therefore, that the ordinance was not superseded by the general statute quoted.

It is further contended that the judgment must be sustained on the ground that the game the defendant played at is not one prohibited by the ordinance.    It is true the game known as "Twenty-six" is not enumerated in the ordinance, but the ordinance is general in its terms, and prohibits a person from playing at any game of chance played with dice

for money, or representatives of money, and is broad enough to include the game played at by the respondent.

The judgment appealed from is reversed, and the cause remanded with instructions to reinstate the case and overrule the demurrer.

HADLEY, C. J., RUDKIN, CROW, ROOT, DUNBAR, and MOUNT, JJ., concur.