## SALT LAKE CITY v. DORAN.

No. 2410.   Decided March 31, 1913.   Rehearing Denied April 21, 1913
(131 Pac. 636).

1. GAMING—GAMBLING DEVICES—STATUTES—CONSTRUCTION. Comp. Laws 1907, sec. 4261, as amended by Laws 1911, c. 134, provides that every person who deals, or carries on, opens, or causes to be opened, or who conducts any game of faro, monte, roulette, lansquenet, rouge et noir, rondo, "or any game played with cards, dice, or any other device," for money, checks, credit, or other representative of value, shall be deemed guilty of a felony. *Held*, that the maxim "*ejusdem generis*" was not applicable to such section, and that the phrase "or any other game played with cards, dice, or any other device" was not limited by the preceding games specified, and hence the statute prohibited the operation of slot machines as a means of selling goods, whereby trade was stimulated by the hope that the customer, by producing certain card combinations on the machine, would increase the quantity of merchandise that he could purchase for money desposited.[1]   (Page 409.)

2. GAMING—SLOT MACHINES—"GAMBLING." The use of a slot machine by a merchant to stimulate trade pursuant to a scheme by which the purchaser was given the value of his money deposited in the machine in any event, but in doing so had a chance of obtaining from twice to a hundredfold the value in goods of what he could buy for the money deposited, in case the machine showed certain card combinations, constituted "gambling." (Page 410.)

---

[1] Bruce v. Sharp, 41 Utah, 566, 127 Pac. 343; Plaster Mfg. Co. v. Juab County, 33 Utah, 124, 126, 93 Pac. 57, 58.

42 Utah 26

3. GAMING—GAMBLING DEVICES—SUPPRESSION—STATUTES. A slot machine used by a merchant to stimulate trade, under a scheme by which the customer, by depositing money in the machine, is bound in any event to get the value in merchandise of the money deposited, and may in addition, by producing certain card combinations, obtain very much more, is within Comp. Laws 1907, sec. 206, subd. 40, providing that the authorities of cities of a certain class shall have power to suppress and prohibit gambling, lotteries, and all fraudulent devices and practices, and all kinds of gaming played at dice, cards, or other games of chance. (Page 412.)

4. MUNICIPAL CORPORATIONS—SUPPRESSION OF GAMING—POWER OF CITIES. The power of city authorities conferred by Comp. Laws 1907, sec. 206, subd. 40, to suppress all kinds of gaming, playing at dice, cards, and other games of chance, is not limited to the suppression of the precise games mentioned in section 4261, as amended by Laws 1911, c. 134. (Page 412.)

5. GAMING—FORMS OF GAMBLING—LEGALIZATION—CONSTITUTION. Under Const. art. 6, sec. 28, providing that the legislature shall not authorize any game of chance, lottery, or gift enterprise, under any pretense, or for any purpose, the legislature cannot, under any circumstances, legalize any form of gambling within the state. (Page 413.)

6. MUNICIPAL CORPORATIONS—DEVICES—SLOT MACHINES. An ordinance of Salt Lake City making it unlawful for any person to use within the city any clock, slot, or card machines on which money is staked, or any commodity, merchandise, or other valuable thing is hazarded, or as the result of the operation of which any merchandise or thing of value is obtained, includes a slot machine used by a merchant to stimulate sales, notwithstanding the customer was given the value of his money deposited in the machine in merchandise in any event. (Page 414.)

7. MUNICIPAL CORPORATIONS—SLOT MACHINES—CITY ORDINANCES. Such ordinance did not prohibit the use of slot machines for an innocent and harmless purpose, not amounting to gambling, and was therefore not invalid on that ground. (Page 414.)

APPEAL from District Court, Third District; *Hon. F. C. Loofbourow*, Judge.

B. F. Doran was convicted of violating a gambling ordinance of Salt Lake City and he appeals.

AFFIRMED.

*Powers* and *Marioneaux* for appellant.

*H. J. Dininny* and *Aaron Myers* for respondent.

### APPELLANT'S POINTS.

A valuable consideration must be paid,. directly or indirectly, for a chance to draw a prize by lot, to bring the transaction within the class of lotteries or gift enterprises that the law prohibits as criminal. (*Buckalew v. State,* 62 Ala. 334, 34 Am. Rep. 22; *State v. Bryant,* 74 N. C. 207; *Commonwealth v. Wright,* 137 Mass. 250, 50 Am. Rep. 306; *State v. Clarke,* 33 N. H. 329, 66 Am. Dec. 723; *State v. Shorts,* 32 N. J. L. 398, 90 Am. Dec. 668; *Wilkinson v. Gill,* 74 N. Y. 63, 30 Am. Rep. 264; *Governors v. American Art Union,* 7 N. Y. 228; *State v. Mumford,* 73 Mo. 647, 39 Am. Rep. 532; *Hull v. Ruggles,* 59 N. Y. 424; *Thomas v. People,* 59 Ill. 160; *United States v. Olney,* 1 Deady, 461; *Yellowstone Kit. v. State,* 88 Ala. 196, 16 Am. St. Rep. 38).

The ordinance plainly includes all use of slot machines in a transaction in the nature of a lottery, whether a consideration is paid for the chance or not; that it is thus too broad, and the ordinance is wholly void. (*Second Municipality v. Morgan,* 1 La. Ann. 111; *Chamberlain v. City of Hoboken,* 38 N. J. Law (9 Vroom), 110; *State v. Webber,* 107 N. C. 962, 12 S. E. 598; *Mathews v. People,* 67 N. E. 28, 202 Ill. 389.)

### RESPONDENT'S POINTS.

A city may punish as a misdemeanor an offense which a state punishes as a felony (*People v. Tanrahan,* 4 L. R. A. (Mich.) 757; *Seattle v. McDonald,* 91 Pac. (Wash.) 952; McQuillen on Municipal Corporations, secs. 877, 878; Dillon on Municipal Corporations (5 Ed.), secs. 632 and 63; Cooley on Constitutional Limitations, secs. 188, 199, 239, and 596.)

All of the statutes of Utah relating to gambling and lotteries, and authorizing municipalities to deal with these offenses, are to be read in the light of section 28, article 6, of the Constitution of Utah, which is as follows: "The legislature shall not authorize any game of chance, lottery or gift enterprise under any pretense, or for any purpose." But independently of any constitutional provision, it is almost universally held that where specific authority is granted by a statute to municipalities to legislate concurrently with the state in the regulation of a general and diversified form of crime, such as gambling, the municipality is not confined to the particular varieties of the offense which may be enumerated in the statute making it a crime against the state. (McClain on Criminal Law, sec. 63; *Greenville v. Remmis,* 50 L. R. A. (S. C.) 725; *Ex parte Hoffman,* 99 Pac. (Cal.) 517; *Re Stegenga,* 61 L. R. A. (Mich.) 763; *Brownville v. Cook,* 4 Neb. 1; *Rossberg v. State,* 111 Md. 394; *Elsner Bros. v. Hawkins,* 73 S. E. (Va.) 479; *Talladega v. Fitzpatrick,* 32 So. (Ala.) 252; *Linneus v. Dusky,* 19 Mo. App. 20; *Seattle v. Chin Let,* 52 Pac. (Wash.) 324; *State v. Flint,* 63 Conn. 248, 28 Atl. 28; *McInerney v. Denver.* 29 Pac. 516; *Blodget v. McVey,* 108 N. W. 239; *Pekin v. Smelzel,* 21 Ill. 464; *McPherson v. Chebanse,* 28 N. E. (Ill.) 454; *State v. Newman,* 71 N. W. (Wis.) 438; *State ex rel. City of Butte v. District Court,* 95 Pac. (Mont.) 841; *May v. Craig,* 109 Pac. (Cal. App.) 842; *Chicago v. Union Ice Cream Co.,* 96 N. E. (Ill.) 872.)

It is perfectly clear from the facts stated in the stipulation that the transaction involved in the operation of the machine is one inseparable whole; that the patron purchases with his nickel not only the right to a cheap cigar if he chooses to avail himself of it, but also the right to acquire additional cigars of a higher value by the chance operation of the machine. As the Supreme Court of the United States said in the case of *Horner v. United States,* 147 U. S. 449: "The element of certainty goes hand in hand with the element of lot or chance, and the former does not destroy the existence or the effect of the latter." (*Lang v. Merwin,*

99 Me. 486, 59 Atl. 1021; *Meyer v. State,* 112 Ga. 20, 51
L. R. A. 496; *Lytle v. State,* 100 S. W. (Tex.) 1160; *State
v. Vasquez,* 49 Fla. 126; *Loiseau v. State,* 114 Ala. 34;
*Meeks v. State,* 74 S. W. (Tex.) 910.)

To the effect that slot machines are obnoxious to laws and
ordinances against the particular form of gambling known
as a lottery are the cases of *New Orleans v. Collins,* 27 So.
(La.) 532; *State v. Vasquez,* 38 So. (Fla.) 830; *Loiseau
v. State,* 22 So. (Ala.) 138; *Meyer v. State,* 51 L. R. A.
(Ga.) 496.

FRICK, J.

Appellant was convicted in the city court of Salt Lake
City, and, upon appeal to the district court of Salt Lake
County, was again convicted for the violation of a certain
ordinance of said city. The appeal to this court is based up-
on the claim that, for the reasons hereinafter stated, the
ordinance in question is invalid. The portions of the ordi-
nance that are deemed material are as follows:

"Section 1. All gambling and gaming of every kind and
description, by playing at cards, dice, faro, roulette, keno,
poker, slot machines, devices known as trade machines, or
any like machines or devices by whatever name known, or
any other contrivance or device by or which money, mer-
chandise or other thing of value may be staked, bet or haz-
arded, won or lost, upon chance, or at any other game or
scheme of chance whatever, . . . for money or other
property or thing of value within Salt Lake City, is hereby
declared to be unlawful.

.     .     .     .     .     .     .     .

"Sec. 6. It shall be unlawful for any person to keep or
maintain any slot machine, or trade machine, or any like
machine or device, for the purpose of suffering or permitting
other persons to play at or with the same for money or any-
thing of value.

"Sec. 7. It shall be unlawful for any person, either as
owner, lessee, agent, employee, mortgagee, or otherwise, to
operate, keep, maintain, rent, use, or conduct, within the City

of Salt Lake, any clock, tape, slot, trades or card machines, or any other machine, contrivance or device upon which money is staked or hazarded upon chance, or into which money is paid, deposited or played, upon chance, or upon the result of the action of which, money or any commodity or merchandise, or any other article or thing of value is staked, hazarded, won or lost upon chance.

"Sec. 8. It shall be unlawful for any person, either as owner, lessee, agent, employee, mortgagee or otherwise, to operate, keep, maintain, rent, use or conduct within the City of Salt Lake any machine, contrivance, appliance or mechanical device upon the result of the action of which money or any commodity, merchandise or other valuable thing is staked or hazarded, and which is operated or played by placing or depositing therein any coins, substitutes for coins, checks, slugs, balls or other article or device, or in any other manner, and by means of the action whereof, or as a result of the operation of which, any merchandise, money, representative or article of value, check or token redeemable in, or exchangeable for money, or any other thing of value is won or lost, or taken from or obtained from such machine, when the result of the action or operation of such machine, contrivance, appliance or mechanical device is dependent upon hazard or chance."

The ordinance became effective March 1, 1912, and for each violation thereof imposes a fine not exceeding fifty dollars or imprisonment not exceeding thirty days in the city jail, or both such fine and imprisonment.

The complaint filed against appellant was based on sections 7 and 8 of said ordinance, which sections we have given in full. The material part of the complaint is as follows: That on the 16th day of March, 1912, appellant, in a certain room in Salt Lake City, did "unlawfully keep, maintain, use, and conduct five certain machines, known as trade or card machines, being then and there contrivances and devices into which money was and is paid, deposited, and played upon chance, and, upon the result of the action of said machines, cigars and merchandise, then and there of

value, was staked, hazarded, and won or lost upon chance, which said trades machines then and there were gambling and gaming devices, contrary to the provisions of an ordinance of said city to prohibit gambling and gaming enacted by the honorable board of commissioners of said city and in force on and after March 1, A. D. 1912."

The case was submitted to the district court upon an agreed statement of facts which are substantially as follows: That, at the time the complaint was filed, appellant was the owner of a certain bar and cigar stand in Salt Lake City; that he was at that time engaged in the retail liquor and cigar business, and in connection therewith "kept, maintained, used, and operated five machines, known as trade or card machines," in the interior of which there was a contrivance consisting of five wheels or cylinders about one inch wide, all of which revolved upon independent axes; that upon each one of said wheels or cylinders are fastened eleven small playing cars, making fifty-five in all, being three cards in excess of a common deck of playing cards; that said wheels and cards are in a small box or cabinet of which only a certain space is open through which a certain number of the cards are visible when the wheels stop revolving; that, in case a nickel is dropped into a certain slot of said cabinet, all of the wheels or cylinders, with the cards thereon, are, by a concealed mechanism or device, set in motion, and each wheel revolves upon its own axis, so that, when all of the wheels stop, just five of the cards appear in a longitudinal row and are visible through the space aforesaid, and the five cards so visible represent or constitute what is called a "hand;" that any person who desires may drop a nickel in the slot and set the wheels in motion and the person dropping the nickel in the slot for each nickel deposited therein is entitled to receive one five-cent cigar of any kind kept on sale by appellant in his business; that if in revolving said wheels the cards are so arranged upon them that by chance they are stopped so as to exhibit in a single row the following cards, ace, king, queen, jack, and ten spot of one suit, it is called a royal flush, and entitled the person depositing

the nickel to one hundred cigars in addition to the five-cent cigar, as before stated; that a straight flush is composed of five cards, all of one suit, when they appear in the following order, namely, two, three, four, five, and six, or any other five numbers in their natural order or sequence, and this entitled the depositor of the nickel to twenty-five cigars; that when four of a kind appear (for example, four aces, four kings, four queens, etc.), the depositor is entitled to fifteen additional cigars; that if three of one kind and two of another kind happen to be in a row, the depositor is entitled to ten additional cigars; that, if a "flush" (that is, five cards all of one suit) appear, the depositor is entitled to five additional cigars; that, if five cards of any kind or suit appear in regular rotation or sequence, the depositor is entitled to four additional cigars; that, if three cards of one kind (that is, all tens or jacks, etc.) appear, the player is entitled to three additional cigars; that if two pairs appear the player is entitled to two additional cigars, and if only one pair appears then he is entitled to one additional cigar. If none of the foregoing combinations appear, the depositor, as we have said, obtains at all events one five-cent cigar. The order in which the cards appear is a mere matter of chance, depending upon the revolutions of the several wheels or cylinders.

We have a statute (Comp. Laws 1907), known as subdivision 40 of section 206, which, so far as material here, provides that the authorities of cities of the class of Salt Lake City shall have the power to "suppress and prohibit gambling houses and gambling, lotteries, and all fraudulent devices and practices, and all kinds of gaming, playing at dice, cards, and other games of chance." The ordinance in question is based upon the power conferred in the foregoing section. There is a further statute (Comp. Laws 1907, sec. 4261, as amended in 1911 [Laws 1911, p. 265]), which among other things, provides:

"Every person who deals, or carries on, opens or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, roulette,

lansquenet, rouge et noir, rondo, *or any game played with cards, dice, or any other device,* for money, checks, credit, or any other representative of value shall be deemed guilty of a felony. . . ." (Italics ours.) The remaining portion of the section is of no importance here. The validity thereof was under consideration by this court in the recent case of *Bruce v. Sharp,* 41 Utah, 566, 127 Pac. 343, where we held the portion we have quoted above valid, regardless of whether the remaining portion was subject to the objection urged against it in said case or not.

Appellant, however, insists that the ordinance in question is void, in so far, at least, as it undertakes to prevent him from using, or permitting the use of, the slot machines in question when used for the purposes and in the manner we have hereinbefore set forth. This contention is based upon the theory that under the general terms of section 4261, *supra,* the use of the slot machines in the manner and for the purposes stated is not prohibited by said section. As a corollary of the foregoing claim, it is insisted that the city authorities had no power to prohibit or punish any act as gambling which does not come within the terms of said section, and which is not prohibited thereby. Is this contention tenable?

The claim that the slot machines in question do not come within the provisions of section 4261 seems to us cannot be sustained. The only basis for such a claim is that the phrase "or any other game played with cards, dice, or any other device," following the statement of the statute, wherein the names of specific games are mentioned, must be construed in accordance with the doctrine of *ejusdem generis,* and that in applying that that doctrine or maxim the slot machines in question do not come within any of the games mentioned in said section. If it be conceded that slot machines do not come within any of the games specifically mentioned in said section, yet, in our judgment, they clearly come within the term used in the phrase which we have italicized. In our opinion the doctrine or maxim of *ejusdem generis* does not

have, and was not intended to have, any application to section 4261. In our judgment the legislature, in adding the phrase in italics, clearly intended to cover and include any and all other games played with cards, in whatever form the cards should be used, and also all other devices where the use thereof amounted to gambling as that term is popularly understood. We had occasion to discuss somewhat at length the application of the doctrine or maxim of *ejusdem generis* in the case of *Plaster Mfg. Co. v. Juab County,* 33 Utah, 124, 126, 93 Pac. 57, 58. We there pointed out that the doctrine is but a rule of construction to aid courts in ascertaining the meaning and to prevent their transcending the intention of the legislature when using general terms following particular ones in the enactment of laws. It is there held, in effect, that, when the meaning or intention of the lawmaker is clear, the doctrine cannot be applied for the purpose of narrowing or limiting the meaning of a word or phrase so as to defeat the legislative intent. We cannot, nor is it now necessary, to add anything to what is said upon the subject in the case referred to. It must suffice to say that it is as clear in this case at it was in that that the doctrine has no application. (*Woodworth v. State,* 26 Ohio St. 196; *Foster v. Blount,* 18 Ala. 687; *State v. Solomon,* 33 Ind. 450; *Tisdell v. Comb,* 7 A. & E. [Eng. Com. Law] 233; Black, Interpretation of Laws [2 Ed.], 218, 219.) Upon the point now under consideration, the case of *City of Seattle v. MacDonald,* 47 Wash. 298, 91 Pac. 952, 17 L. R. A. (N. S.) 49, is not distinguishable from the case at bar. (See, also, *Territory v. Jones,* 14 N. M. 579, 99 Pac. 338, 20 L. R. A. [N. S.] 239, 20 Ann. Cas. 128.)

It is further contended as we understand counsel for appellant, that the use of the slot machines, when used in the manner detailed herein, does not constitute "gambling," as that term is defined in section 4261, *supra,* and further that the city authorities were not given the power by the legislature to suppress or prohibit gambling, except as defined in said section. It is not necessary to

pause now for the purpose of again defining the term "gambling." The books are full of such definitions. In our judgment, the use of the slot machines in the manner hereinbefore described constitutes gambling, pure and simple, within most any of the definitions. It is true that the person who deposits the nickel in the slot receives an ordinary five-cent cigar for every nickel so deposited, and therefore he risks nothing. If nothing were considered, therefore, save one transaction, the depositing of one nickel and receiving therefor one five-cent cigar, the transaction would seem quite innocent. But, if there were nothing more than this, appellant, in all probability, would not continue the use of the slot machines for the simple reason that his customers would not resort to their use for the purpose of obtaining a cigar, but would purchase the cigar in the usual way by passing the nickel over the counter. The customer resorts to the use of the machine because, in depositing the nickel therein, he has various chances of winning from twice to a hundredfold the number of cigars for the nickel deposited by him. He therefore wages or stakes, if you please, the nickel in the hope of gaining much more than the value thereof in case the chances are in his favor. In view, however, that he may obtain a hundredfold in return for the nickel, it would seem that the chances for winning that amount must be limited indeed. The chance to do so, however, exists, and the player deposits nickel after nickel in the hope of winning. Upon the other hand, the owner of the machines hopes that chance will favor him by not permitting the customer to receive more than one cigar. In the hope that he may gain by chance, the customer will keep on depositing nickels, and in doing so swell the sales and profits of the owner of the machines far beyond what his sales and profits would be if cigars were sold in the ordinary way, and the chance or gambling element were eliminated. In illustrating this feature, it is well said by the Supreme Court of Maine (*Lang v. Merwin,* 99 Me. at page 489, 59 Atl. at page 1022, 105 Am. St. Rep. 293) that:

"The element of chance is the soul of the transaction. The operator hopes by chance to get something for nothing. The dealer hopes chance will save him from giving something for nothing. Each is pecuniarily interested adverse to the other in a result to be determined solely by chance. To use the language of the street, 'it is a gamble' which will win, and we have no doubt the transaction is 'gambling' in the statutory sense of the word."

To the same effect are the recent cases of *City of Seattle v. McDonald, supra; Loiseau v. State,* 114 Ala. 34, 22 South. 138, 62 Am. St. Rep. 84; *Territory v. Jones,* 14 N. M. 579, 99 Pac. 338, 20 L. R. A. (N. S.) 239, 20 Ann. Cas. 128; *Lytle v. State* (Tex. Cr. App.), 100 S. W. 1160; *Meyer v. State,* 112 Ga. 20, 37 S. E. 96, 51 L. R. A. 496, 81 Am. St. Rep. 17; *In re Cullinan,* 114 App. Div. 654, 99 N. Y. Supp. 1097. Upon the question that playing slot machines constitutes gambling, neither of the foregoing cases is distinguishable from the case at bar.

But assuming, for the sake of argument, that slot machines are not included within the terms of section 4261, yet they, in our opinion, come clearly within the terms of subdivision 40, sec. 206, *supra,* wherein the power to suppress and prohibit gambling is conferred upon city authorities. In making this statement, we are not unmindful of the general rule that city authorities may exercise such powers only as are expressly conferred by the legislature, or such as are necessarily or clearly implied, and those which are necessary to carry into effect any power which is expressly conferred, or necessarily implied. We think the power to suppress slot machines is clearly and intentionally conferred by what is said in subdivision 40 of section 206, *supra.*

Nor do we think that the power to suppress gambling by city authorities is limited to the precise games mentioned in section 4261. In our opinion the city authorities are given the express power to suppress all gambling and gambling devices regardless of whether they are enumerated in or in express terms covered by said section or not. There is absolutely nothing contained in the Constitution of this state which prevents the legislature from

conferring power upon the cities of this state to suppress all forms of gambling. The power to do so is clearly given in the statute to which we have referred. Under the power thus given, we think the cities of the state to which the statute applies not only have the power to punish all gambling which is punishable by the state law (McQuillin, Mun. Ord., sec. 500), but they may also suppress gambling, gambling devices, and games that are not enumerated in the state law. That is, under such a power, as it is expressed by the Supreme Court of California in *Ex parte Hong Shen*, 98 Cal. 681, 33 Pac. 799, "there may be different regulations without conflict," covering the same subject-matter, one for the cities and another for the state at large. Or as is said in 28 Cyc. 701: "Additional regulation by the ordinance does not render it void." To the same effect are *Rossberg v. State*, 111 Md. 394, 74 Atl. 581, 134 Am. St. Rep. 626; *City of Chicago v. Ice Cream Co.*, 252 Ill. 311, 96 N. E. 872, Ann. Cas. 1912D, 675.

This doctrine applies with full force in this state to all gambling and gambling devices for the reason that the legislature cannot, under any circumstances, legalize any form of gambling whatever under the provisions of article 6, sec. 28, of the Constitution of this state. In view of this, and that it is a well-known fact that numerous games and gambling devices are often resorted to for gambling purposes within the corporate limits of municipalities, and especially within the limits of the larger and more populous ones, for the reason that the opportunities for patronage are much greater therein than in sparsely settled districts of the state, it is easy to perceive why cities are and should be given a free hand in suppressing the vice of gambling in whatever form it may present itself. In the enactment of subdivision 40, sec. 206, the purpose of giving cities plenary power to suppress gambling in all its forms is clearly manifested. We are of the opinion, therefore, that, although it were conceded that the use of slot machines in the manner in which those in question are used were not prohibited by section 4261, yet that, under the power conferred by

subdivision 40 of section 206, the city authorities of Salt Lake City had the power to adopt the ordinance in question.

Nor can it be doubted that the provisions of said ordinance clearly include appellant's slot machines.

Finally, it is contended that the ordinance in question is void because it prohibits the use of slot machines, although the use made thereof may not be for the purpose of gambling, and therefore a use that is innocent and harmless is prohibited. It is contended, and properly so, that neither the legislature nor the city authorities can pass a law or ordinance punishing the mere use of a machine when used for innocent purposes. We are of the opinion that the ordinance is not open to such a construction. The ordinance prohibits and punishes the use of slot machines only when they are used for the purpose for which they are evidently intended, to obtain something for nothing by chance in the manner herein stated. Such a use, as we have seen, clearly constitutes gambling, and no other use, if any can be made of the machine, is prohibited or denounced by the ordinance. No disinterested person can read the different sections of the ordinance which we have quoted herein without arriving at the conclusion that the ordinance prohibits the maintenance or use of the machines only when used and intended for gambling purposes; that is, when used for the purpose of gaining something by chance.

In view of what has been said, we need not determine the question argued at the hearing, whether the use of the machines, as stated, also constitutes a lottery, and that they are therefore prohibited for that reason.

The judgment is affirmed. Respondent to recover costs for printing its brief.

McCARTY, C. J., and STRAUP, J., concur.