[No. 35046. *En Banc.* October 20, 1960.]

THE CITY OF BELLINGHAM, *Respondent,* v. JOHN SCHAMPERA, *Appellant.*[1]

[1]Reported in 356 P. (2d) 292.

*Sherwood & Forrest,* for appellant.

*Charles R. Olson* and *John T. Slater,* for respondent.

HILL, J.—October 1, 1958, John David Schampera was charged in the municipal court of Bellingham with a violation of § 143 of ordinance No. 5777, as amended by ordinance No. 6952, prohibiting the driving of a motor vehicle while under the influence of intoxicating liquor. He was convicted, and appealed to the superior court where he had a trial *de novo.* He was again convicted and sentenced to ninety days in the county jail (fifty days of which were suspended), fined one hundred dollars, and his motor vehicle operator's license suspended for a period of six months.

He appeals to this court and challenges the validity of the Bellingham ordinance under which he was charged and tried. Basically, his contentions are three:

1. The state of Washington by RCW 46.56.010 (a part of the Washington Motor Vehicle Act), making it

" . . . unlawful for any person who is under the influence of or affected by the use of intoxicating liquor . . . to drive or be in actual physical control of any vehicle upon the public highways."

has precluded Bellingham, or any other city in Washington, from passing ordinances directed against the same offense.

2. If Bellingham can enact such legislation, it cannot, as a penalty for its violation, suspend the license of a motor vehicle operator inasmuch as the state has pre-empted the field of the issuance, regulation, and suspension of motor vehicle operators' licenses; and it is, further, not within the maximum penalty provisions allowed to be imposed by first class cities under RCW 35.22.470.

3. If Bellingham can enact such legislation, the particular ordinance now before the court is invalid because the maximum fine and prison term, which it prescribes for the violation of the ordinance, exceed the maximum fine and prison term allowed to be imposed by first class cities under RCW 35.22.470.

We disagree with the contention that Washington cities can not, by ordinance, prohibit driving within their limits by persons under the influence of, or affected by the use of, intoxicating liquor.

We agree that no Washington city can prescribe, as a penalty for a violation of its ordinances, the suspension of a motor vehicle operator's license.

We agree that the city of Bellingham can not impose penalties in excess of those provided by RCW 35.22.470, but we do not agree that this necessarily invalidates the ordinance; and hold that since the penalties of fine and imprisonment which were imposed, were within the limits which the city could impose, they will be affirmed.

We will consider these contentions and amplify our answers thereto under three subheads.

RE: CONTENTION THAT THERE HAS BEEN A PRE-EMPTION BY THE STATE OF THE PROHIBITION AND PUNISHMENT OF THE OFFENSE OF DRIVING ON HIGHWAYS WHILE UNDER THE INFLUENCE OF INTOXICATING LIQUOR.

We have recognized, in numerous cases involving

various types of offenses, the right of a city to enact ordinances prohibiting and punishing the same acts which constitute an offense under state laws so long as the city ordinance does not conflict with the general laws of the state, or the state enactment does not show upon its face that it was intended to be exclusive. *Seattle v. Hewetson* (1917), 95 Wash. 612, 164 Pac. 234 (prohibiting the sale of intoxicating liquor); *Allen v. Bellingham* (1917), 95 Wash. 12, 163 Pac. 18 (regulating jitney busses); *Seattle v. MacDonald* (1907), 47 Wash. 298, 91 Pac. 952, 17 L. R. A. (N. S.) 49 (prohibiting gambling); *Bellingham v. Cissna* (1906), 44 Wash. 397, 87 Pac. 481 (regulating speed of automobiles); *Seattle v. Chin Let* (1898), 19 Wash. 38, 52 Pac. 324 (prohibiting lotteries).

These cases point out our constitutional provision declaring that any

" . . . county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." Washington Constitution, Art. XI, § 11.

Of this constitutional provision (§ 11), we have said:

"This is a direct delegation of the police power as ample within its limits as that possessed by the legislature itself. It requires no legislative sanction for its exercise so long as the subject-matter is local, and the regulation reasonable and consistent with the general laws." *Detamore v. Hindley* (1915), 83 Wash. 322, 326, 145 Pac. 462. See, also, *State v. Tucker* (1926), 137 Wash. 162, 242 Pac. 363.

Bellingham, together with other first class cities, has the power by ordinance

" . . . to provide for the punishment of all disorderly conduct, and of all practices dangerous to public health or safety, and to make all regulations necessary for the preservation of public morality, health, peace, and good order within its limits; to provide for the arrest, trial, and punishment of all persons charged with violating any of the ordinances of said city; to provide for the imposition by police judges of a fine not to exceed three hundred dollars or imprisonment not to exceed ninety days, or both such fine and imprisonment. [1923 c 182 § 1; RRS § 8992-1.]" RCW 35.22.470.

Another section of our motor vehicle statute should also be in our thinking as we discuss this phase of the case. RCW 46.08.020 is as follows:

"Precedence over local vehicle and traffic regulations. The provisions of this title relating to vehicles shall be applicable and uniform throughout this state and in all cities and towns and all political subdivisions therein and no local authority shall enact or enforce any law, ordinance, rule, or regulation in conflict with the provisions hereof unless expressly authorized by law to do so and any laws, ordinances, rules, or regulations in conflict with the provisions of this title are hereby declared to be invalid and of no effect. Local authorities may, however, adopt additional vehicle and traffic regulations which are not in conflict with the provisions hereof. [1937 c 189 § 2; RRS § 6360-2.]"

Particular attention is directed to the authorization to local authorities to adopt additional traffic and vehicular regulations which are not in conflict with the other provisions of the act.

No case in this state has considered whether an ordinance, prohibiting driving while under the influence of intoxicating liquor is in "conflict" with our state law on the same subject, *i.e.*, RCW 46.56.010, either under its present form (Laws of 1955, chapter 393, § 3, p. 1700), or as enacted by Laws of 1937, chapter 189, § 119, p. 910.

The following cases from other states have held that ordinances prohibiting driving while under the influence of intoxicating liquor are invalid—either on the theory that such driving was not a matter of local concern, or that the ordinance was in conflict with state law, or that, if it was concurrent in its effect, the state had pre-empted the field. *Canon City v. Merris* (1958), 137 Colo. 169, 323 P. (2d) 614; *City of Billings v. Herold* (1956), 130 Mont. 138, 296 P. (2d) 263; *Fargo v. Glaser* (1932), 62 N. D. 673, 244 N. W. 905; *Clayton v. State* (1931), 38 Ariz. 135, 297 Pac. 1037, (rehearing) 300 Pac. 1010; *Helmer v. Superior Court of Sacramento County* (1920), 48 Cal. App. 140, 191 Pac. 1001.

The following cases have upheld such ordinances, as dealing with matters of local concern and not in conflict with the state law though operating concurrently: *State ex rel.*

*Coffin v. McCall* (1954), 58 N. M. 534, 273 P. (2d) 642; *State v. Poynter* (1950), 70 Idaho 438, 220 P. (2d) 386; *Mares v. Kool* (1946), 51 N. M. 36, 177 P. (2d) 532; *Salt Lake City v. Kusse* (1939), 97 Utah 113, 93 P. (2d) 671; *Shaw v. Norfolk* (1937), 167 Va. 346, 189 S. E. 335; *Kistler v. City of Warren* (1937), 58 Ohio App. 531, 16 N. E. (2d) 948; *State v. Hughes* (1930), 182 Minn. 144, 233 N. W. 874; *Village of Struthers v. Sokol* (1923), 108 Ohio St. 263, 140 N. E. 519.

■ We find the reasoning of the latter group of cases more convincing and, particularly, the New Mexico and Utah cases which construed acts quite similar to our own, *i.e.,* the Uniform Motor Vehicle Act; and, further, because in the Utah case the City of Salt Lake had copied the state statute quite closely. (In the present case, Bellingham had copied the statute verbatim.) The court, in the *Utah* case, says (p. 119):

"We see nothing inconsistent between that part of the ordinance which prohibits driving while under the influence of liquor and the provisions of Title 57,"

and follows that statement with the following quotations from Ohio and Wisconsin cases:

" ' "In determining whether an ordinance is in 'conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." *Village of Struthers v. Sokol,* 108 Ohio St. 263, 140 N. E. 519. Judged by such a test, an ordinance is in conflict if it forbids that which the statute permits' *State v. Carran,* 133 Ohio St. 50, 11 N. E. 2d 245, 246.

" 'The statute, as well as the ordinance, in the case at bar, is prohibitory, and the difference between them is only that the ordinance goes farther in its prohibition—but not counter to the prohibition under the statute. The city does not attempt to authorize by this ordinance what the Legislature has forbidden; nor does it forbid what the Legislature has expressly licensed, authorized, or required. * * * Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not to be deemed inconsistent because of mere lack of uniformity in detail. *Bodkin v. State* [132 Neb. 535] 272 N. W. 547; *City of Mobile v. Collins,* 24 Ala. App. 41, 130 So. 369'. *Fox v. City of Racine,* 225 Wis. 542, 275 N. W. 513, 515." .

We conclude that the ordinance of the city of Bellingham, here in question, was not in conflict with our state statute, and there is no indication that the legislature intended to pre-empt the field of legislation with which we are concerned in this phase of the appeal. The appellant's first contention is without merit. (It should be noted here that we are not concerned with any issue of double jeopardy; for a discussion of that subject see *State v. Tucker, supra.*)

RE: CONTENTION THAT STATE HAS PRE-EMPTED THE MATTER OF THE MOTOR VEHICLE OPERATORS' LICENSES AND THAT THE CITIES HAVE NO AUTHORITY TO PROVIDE FOR THEIR SUSPENSION.

The city of Bellingham provided, in its ordinance No. 6952, that on a first conviction of the offense of driving a motor vehicle while under the influence of intoxicants,

". . . the court shall impose a fine of not less than fifty dollars or more than five hundred dollars and not less than five days or more than one year in jail, and shall, in addition thereto, suspend the operator's license of such person for not less than thirty days."

■ We are, in this portion of the opinion, concerned only with the authority of the city to suspend the appellant's motor vehicle operator's license. It is urged by the appellant that the state has, by RCW 46.08.010, in specific terms pre-empted the field of the issuance, suspension, and revocation of motor vehicle licenses, and that a city cannot suspend or revoke a license. That section is as follows:

"State preempts licensing field. The provisions of this title relating to certificates of ownership, certificates of license registration, vehicle licenses, vehicle license plates and vehicle operator's licenses shall be exclusive and no political subdivision of the state shall require or issue any licenses or certificates for the same or a similar purpose, nor shall any city or town in this state impose a tax, license, or other fee upon vehicles operating exclusively between points outside of such city or town limits and points therein. [1937 c 188 § 75; RRS § 6312-75.]"[2]

[2]This was Laws of 1937, chapter 188, § 75, p. 831, "Washington Highway License Act." The section began, "The provisions of this act." The codifier has used the words "this title" which includes much more than "this act"; it includes the "Washington Motor Vehicle Act" with

*Amicus curiae,* representing the city of Auburn, argues that though the quoted statute pre-empts for the state the issuance of motor vehicle operators' licenses, it does not preclude a city from exercising suspensory power, if it has the implied power so to do.

Passing, for the moment, the pre-emption claim, we find not only no implied power to suspend licenses, but a specific limitation. Attention is again directed to RCW 35.22.470, heretofore quoted on page 109.

It is plain that the "punishment of all persons charged with violating any of the ordinances of said city," is not to exceed a fine of three hundred dollars or ninety days, or both. Whether the problem is approached from the standpoint of pre-emption by the state or lack of power on the part of the city, the result is the same—the city cannot, in the absence of express authority from the state, revoke a motor vehicle operator's license.

 It is, however, the city's contention that RCW 46-.08.190 (Laws of 1955, chapter 393, § 4, p. 1702), which reads as follows:

"Jurisdiction of justices of peace, police court and superior court. Every justice of the peace and police court judge shall have concurrent jurisdiction with superior court judges of the state for all violations of the provisions of this title and may impose any punishment provided therefor. [1955 c 393 § 4.]"

gave to it, and necessarily to every other city in the state, the authority to enact such an ordinance and impose such a penalty and that this section is the answer to the claim of pre-emption and is a specific grant of power.

We cannot agree. The quoted statute does not purport to be a grant of legislative power to cities. Police court

some 159 sections (Laws of 1937, chapter 189, together with amendments.) The "driving under the influence" statute (RCW 46.56.010) was § 119 of chapter 189. This information is perhaps not significant in our present inquiry, but is intended to flag attention to the fact that the pre-emption section was not in the same act with RCW 46.56.010, considered in the preceding subdivision of this opinion. References to "the provisions of this title" throughout Title 46 should not be taken literally because the title is made up of different acts.

judges are given concurrent jurisdiction with superior court judges, but only for "violations of the provisions of this title." The "provisions of this title" are state statutes, not municipal ordinances.

Shortly after the 1955 amendment to the motor vehicle code was adopted, the Attorney General issued an opinion correctly advising that Laws of 1955, chapter 393, § 4 did not authorize cities to impose, by ordinance, penalties equal to those provided by the motor vehicle code. A.G.O. 1955-57, No. 118 (July 20, 1955).

There is, however, one other section in RCW, *i.e.*, RCW 46.20.280, dealing with reports to the Director of the Department of Licenses, which would seemingly support an argument that the legislature in amending the Washington Highway License Act in 1939 intended to give municipal court judges the power to revoke or suspend a vehicle operator's license where municipal ordinances had been violated. That section reads as follows:

"Courts to forward record of convictions. Every court having jurisdiction over any of the offenses defined by this chapter or any other law of this state or by the ordinance of any city or town regulating the operation of vehicles on the public highways, shall forward to the director a record of the conviction or forfeiture of bail of any person in such court for the violation of any provision of law relating to the licensing of vehicle operators or of any law regulating the operation of vehicles on the public highways, and a record of the conviction or forfeiture of bail of any person for the violation of any municipal ordinance which violation would also be an offense under the provisions of law relating to the licensing of vehicle operators or of any law regulating the operation of vehicles on the public highways. *In such latter case the court may also revoke or suspend the vehicle operator's license of the defendant.* [1939 c 182 § 10; 1937 c 188 § 67; RRS § 6312-67.]" (Italics ours.)

The italicized sentence is the brain child of whoever may have been responsible for getting § 10, p. 573, chapter 182, Laws of 1939 (Rem. Rev. Stat. (Sup.), Vol. 7A, § 6312-67) into RCW. There is no such sentence in the legislative act, which reads as follows: .

"That section 67 of chapter 188, Session Laws of 1937, be and the same is hereby amended to read as follows:

"Section 67. Every court having jurisdiction over any of the offenses committed under this act or any other act of this state or under the ordinance of any incorporated city or town of this state regulating the operation of vehicles on any of the public highways, shall forward to the Director of Licenses a record of the conviction of or forfeiture of bail by any person in said court for the violation of any provisions relating to the licensing of vehicle operators or of any act of this state regulating the operation of vehicles on any of the public highways and a record of the conviction of or forfeiture of bail by any person in said court for the violation of any municipal ordinances which violation would also be an offense under the provisions relating to the licensing of motor vehicle operators or any act of this state regulating the operation of vehicles on any of the public highways in which case such court may in its discretion revoke or suspend the vehicle operator's license of such person." Laws of 1939, chapter 182, § 10.

Just what the latter part of this section means we are unable to say. As a former assistant attorney general said, in attempting an analysis, it "is more than ambiguous." (A.G.O. 1941-42, pp. 229, 232, September 11, 1942.) It is pointed out, in a quotation from that attorney general's opinion, that the interpretation which the codifier subsequently placed upon the statute, in adding the italicized sentence in RCW 46.20.280, is an absurdity.

". . . Now, when in every other instance such suspension or revocation is effected by the court as a result of an actual conviction or by the director in view of a demonstrable unfitness to drive, it cannot be reasonably advanced that the legislature intended to bestow unlimited discretion upon the courts to be exercised solely and exclusively *because the court is required to send certain records to the director.* . . ." A.G.O. 1941-42, p. 233 (September 11, 1942).

We are satisfied that neither RCW 46.56.010 nor RCW 46.20.280 gives any authority to a police court to suspend a motor vehicle operator's license as a penalty for a violation of a municipal ordinance; nor does the superior court have any authority to impose such a penalty on an

appeal from a police court conviction for the violation of an ordinance. Though the appeal results in a trial *de novo*, the charge is still the violation of a municipal ordinance, and the superior court's authority is specifically limited on such an appeal by RCW 35.22.560 to a fine of not to exceed three hundred dollars, and imprisonment in the city jail for not to exceed ninety days, or by both such fine and imprisonment.

We turn now to a consideration of the cases relied upon by the respondent.

In *Kistler v. City of Warren* (1937), 58 Ohio App. 531, 16 N. E. (2d) 948, we have an express holding that the court could not suspend a motor vehicle operator's license for the violation of an ordinance, but that it could impose the penalty which the ordinance in that case evidently provided, *i.e.*, to suspend the convicted person "from the right to operate a motor vehicle within the city of Warren" for not more than one year.

We are not here concerned with an attempt to suspend the right of the appellant to operate a motor vehicle within the limits of the city of Bellingham, but with an ordinance that provides for the suspension of an operator's license for not less than thirty days and a judgment and sentence that suspends it for six months. This would prevent the appellant from driving any where in the state of Washington for that period of time.

Cases are cited, on behalf of the city, from states where statutes make the conviction of certain offenses in a municipal court the basis for a mandatory revocation of a driver's license, as in *Smith v. City of Gainesville* (1957), 93 So. (2d) 105, where it was held that in revoking the driver's license (of a person convicted of driving a motor vehicle while under the influence of intoxicating liquor) a municipal judge merely followed the mandate of a statute as an administrative representative of the state department of public safety at the municipal level; and a statute imposing the duty of such revocation on a municipal judge imposes a purely ministerial or administrative responsibility, and, therefore, does not constitute an improper delegation of

judicial authority in determining a punishment to be imposed.

Comparable, perhaps, would be our own RCW 46.20.250 (Laws of 1959, chapter 239, § 1, p. 1118) which provides that:

"Mandatory revocation of license by court. Every court in fixing the penalty shall forthwith revoke the vehicle operator's license of a person upon his conviction of any of the following crimes, when such conviction has become final:

"1. . . .
"2. . . .
"3. . . .
"4. . . .
"5. . . .
"6. Conviction or forfeiture of bail upon three charges of operating a vehicle while under the influence of or affected by the use of intoxicating liquor or of any narcotic drug, all within the preceding five years;
"7. . . ."

This is a mandate to "every court" to revoke a license under certain conditions regardless of what penalty the statute or ordinance violated may have provided.

Such situations have no bearing on the problem now under consideration.

The city and the trial court have read too much into RCW 46.08.190, giving police court judges concurrent jurisdiction with the superior court for the violation of certain state statutes, *i.e.*, "the provisions of this title."

We find neither statutory nor case authority to support the proposition that the city of Bellingham, or any other Washington city, has the authority to enact ordinances which carry as a penalty the suspension of a motor vehicle operator's license, or which empowers police courts or any court to suspend such licenses for violations of municipal ordinances, unless it be RCW 46.20.250 which is not applicable to the present case.

The appellant is, therefore, correct in his contention that the portion of the judgment and sentence appealed from, which purports to suspend his driver's license for the vio-

lation of a city ordinance, is beyond the authority of the superior court to enter in this case and must be deleted.

RE: CONTENTION THAT AN ORDINANCE WHICH CARRIES A PENALTY FOR ITS VIOLATION IN EXCESS OF THE POWER OF THE CITY TO IMPOSE IS INVALID.

As we have indicated, Bellingham ordinance No. 6952 carried the penalties for a first conviction of the offense of driving while under the influence of intoxicating liquor of a fine of not less than fifty, or more than five hundred dollars; and not less than five days or more than one year in jail. As we have also pointed out, the maximum penalties which the city could impose were

". . . a fine not to exceed three hundred dollars or imprisonment not to exceed ninety days, or both such fine and imprisonment." RCW 35.22.470.

The question for consideration is whether there can be a valid sentence pronounced under an ordinance which authorizes a penalty in excess of that permitted by state statute. We have already pointed out, but here reiterate, that the fine and jail sentence imposed in this case, *i.e.,* one hundred dollars and ninety days, are within the permissible limits fixed by state statute, *i.e.,* RCW 35.22.470.

■ There is a division of authority on this question, but we adopt the majority and, we believe, the preferable rule: that an ordinance which authorizes a penalty in excess of that permitted by statute is not void, and a sentence pronounced under such an ordinance may be enforced to the extent that it is within the statutory limitations, if the city's legislative body would have enacted the ordinance knowing that only the lesser penalties could be imposed. See *Kist v. Butts* (1942), 71 N. D. 436, 1 N. W. (2d) 612, 138 A. L. R. 1206.

■ We entertain no doubt as to Bellingham's desire and intent to legislate in this field. It has had legislation of similar import with lesser penalties since 1938. It was only its erroneous interpretation of the 1955 amendment to RCW 46.56.010 which induced it to amend its ordinance in 1955 to impose the severer penalties of the state statute.

We, therefore, hold that the sentence of a fine of one hundred dollars and a jail sentence of ninety days (with fifty days suspended) should be affirmed. We are concerned, however, with the designation of the place of imprisonment in the judgment and sentence, *i.e.*, the county jail.

The statute prescribing the limitations of the superior court's authority, on appeals from municipal courts in first class cities, specifically designates the city jail as the place of confinement. RCW 35.22.560.

If the trial court designated the county jail because ordinance No. 6952, which adopted the language of the state statute, refers to the county jail (and if Bellingham does have a city jail), then the judgment and sentence should be changed, because the city's authority to provide punishment for the violation of its ordinances is, as we have seen, not concurrent with the state's authority to punish for the violation of its statutes. On the other hand, if Bellingham by arrangement with Whatcom county uses the county jail for the detention of its prisoners (as is permissible, see RCW 36.63.150-.160), the trial court's designation of the county jail as the place of confinement was correct.

Not knowing the reason for the designation of the county jail in the sentence, we do not feel justified in directing a change in the place of confinement; and we, therefore, remand this case to the superior court with instructions to delete any reference to the suspension of the defendant's motor vehicle operator's license from the judgment and sentence; and to make a change in the place of imprisonment, if there is a city jail in Bellingham.

While we affirm the conviction and the penalty imposed of fine and imprisonment, the appellant, having prevailed in substantial part on this appeal, will recover his costs against the city of Bellingham.

WEAVER, C. J., DONWORTH, FINLEY, ROSELLINI, OTT, and HUNTER, JJ., concur.

FOSTER, J., did not participate.

MALLERY, J. (dissenting)—The city's motive in passing a drunken-driving ordinance identical with state law was

to enable it to try drunken-driving cases committed within the city in the city police court rather than in a justice court and, thus, keep the fines collected for such offenses.

The majority opinion permits the city to achieve this purpose, but to do so it had to approve the bargain rates which the ordinance gives to defendants whose offenses are committed within the city. The rule of this case would be a revenue measure had it been enacted by the legislature, as it should have been, because it relates to sources of city revenue which are all too scarce these days. Assuming that the cities ought to be allowed to keep the fines derived from drunken-driving cases within the city, it is still the prerogative of the legislature to allocate such fines to them. This court can accomplish such a purpose only by striking down the constitutional right relating to equality of persons before the law.

State law requires the revocation of drivers' licenses regardless of whether the offense of drunken driving is committed in or out of a city. The fact that the appellant committed his offense in a city and was charged in a municipal court with a violation of a city ordinance is, therefore, no reason for his keeping his driver's license, as in this case.

State law, RCW 46.56.010, prescribed penalties for drunken driving, which are augmented for the second and subsequent convictions of the offense. There is a maximum penalty of one thousand dollars and a year in the county jail. RCW 46.08.190 (Laws of 1955, chapter 393, § 4, p. 1702) provides:

"Every justice of the peace and police court judge shall have concurrent jurisdiction with superior court judges of the state *for all violations of the provisions of this title* and may impose any punishment provided therefor." (Italics mine.)

The effect of this provision is that an enlarged jurisdiction limited to offenses against the state motor vehicle act is conferred upon justices of the peace and police judges. The enlarged jurisdiction, however, does not apply to the same offense when charged as violations of city ordinances. The fact is that penalties which first-class cities can impose

for violation of city ordinances are considerably less than those pertaining to the state motor vehicle act and are, of course, governed by general law.

RCW 35.22.280 provides:

"Any city of the first class shall have power

". . .

"(36) To provide for the punishment of all disorderly conduct, and of all practices dangerous to public health or safety, and to make all regulations necessary for the preservation of public morality, health, peace, and good order within its limits, and to provide for the arrest, trial, and punishment of all persons charged with violating any of the ordinances of said city; *but such punishment shall in no case exceed the punishment provided by the laws of the state for misdemeanors*; . . ." (Italics mine.)

Specifically, RCW 9.92.030 fixes the punishment for the misdemeanors referred to in RCW 35.22.280, *supra,* at ninety days' imprisonment in the county jail or a fine of not more than two hundred fifty dollars.

It thus appears that, under a city ordinance, the municipal court cannot impose as severe a penalty for the offense here in question as that which is applicable for the same offense when it is charged as a violation of the identically worded state law.

Art XI, § 11, of the state constitution, provides:

"Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations *as are not in conflict with general laws.*" (Italics mine.)

The disparity of penalties between the offenses under the ordinance and under the state statute constitutes a conflict within the purview of the constitutional provision. In this connection, I am referring not only to the longer imprisonment and higher fines prescribed by state statutes, but also to the state's exclusive power to revoke drivers' licenses for the offense in question.

Experience has shown that such great disparity in the penalties which different courts are able to impose inevitably results in improper pressures being put upon public officers and courts by offenders who seek to minimize their

punishment by having their case disposed of in a court limited to the smaller penalties. The implementation of such a choice constitutes a denial of the equal protection of the laws guaranteed by the fourteenth amendment to the United States Constitution. As the United States Supreme Court said in *Pace v. Alabama,* 106 U. S. 583, 27 L. Ed. 207, 1 S. Ct. 637:

" . . . Equality of protection under the laws implies . . . that in the administration of criminal justice he [any person] shall not be subjected, for the same offense, to any greater or different punishment. . . . "

I dissent.