203 P.3d 1044 (2009)
STATE of Washington, Respondent,
v.
Dennis Ray KIRWIN, Petitioner.
No. 80113-4.
Supreme Court of Washington, En Banc.
Argued May 8, 2008.
Decided March 26, 2009.
*1045 Patricia Anne Pethick, Attorney at Law, Tacoma, WA, Thomas Edward Doyle, Attorney at Law, Hansville, WA, for Petitioner.
Thurston County Prosecutor's Office, James C. Powers, Olympia, WA, for Respondent.
FAIRHURST, J.
¶ 1 A jury convicted Dennis Ray Kirwin of unlawful possession of methamphetamine. The police found the methamphetamine in Kirwin's truck during a warrantless search conducted incident to the arrest of the passenger, Casey Irwin. Kirwin claims the State failed to justify the warrantless search of his truck under the search incident to arrest exception. He contends the city ordinance *1046 providing the basis for the arrest is invalid because it conflicts with state law and, therefore, rendered the arrest unlawful. We hold Kirwin has not demonstrated the city ordinance conflicts with state law and affirm the Court of Appeals.

I. FACTUAL AND PROCEDURAL HISTORY
¶ 2 Around 2:00 a.m. in downtown Olympia, Kirwin was driving a truck with Irwin riding in the passenger seat. From his patrol vehicle, Officer Kory Pearce observed the passenger, Irwin, discard a beer can out of the passenger side window and saw its liquid contents spill onto the sidewalk. Officer Pearce activated his emergency lights and saw the passenger lean down as if to conceal something.
¶ 3 Once stopped, Irwin told Officer Pearce he threw the can out of the vehicle to avoid being caught with an open container inside of the truck. Officer Pearce arrested Irwin for littering, which is a misdemeanor under the Olympia Municipal Code (OMC) 9.40.110. After Officer Pearce secured Irwin in the patrol vehicle, he returned to the passenger side of the truck to search the area that was within Irwin's immediate control prior to his arrest. With Kirwin's consent, Officer Pearce searched the locked center console of the truck where he discovered cash and a bag of a crystalline substance he suspected to contain methamphetamine. Officer Pearce placed the driver, Kirwin, under arrest for unlawful possession of a controlled substance. Officer Pearce apprised Kirwin of his Miranda[1] rights, which Kirwin waived; he admitted the methamphetamine belonged to him.
¶ 4 Kirwin was charged with one count of unlawful possession of methamphetamine. At trial, the court admitted as evidence the crystalline substance found in the truck, which was confirmed to contain methamphetamine. Kirwin's attorney did not object to or move to suppress the evidence. A jury convicted Kirwin as charged, and he was sentenced to one year and one day. The Court of Appeals upheld the admission of the evidence based on the search incident to arrest exception to the warrant requirement. State v. Kirwin, 137 Wash.App. 387, 393, 153 P.3d 883 (2007). We granted review. State v. Kirwin, 162 Wash.2d 1013, 178 P.3d 1032 (2008).

II. ISSUE
¶ 5 Whether Officer Pearce conducted a proper search incident to arrest where the ordinance providing the authority for the arrest imposes a criminal sanction for littering when a nearly identical state law imposes only a civil sanction.

III. ANALYSIS
¶ 6 Kirwin alleges the search incident to the arrest of Irwin was unconstitutional under both the Fourth Amendment[2] and article I, section 7.[3] Although not raised at trial, Kirwin may submit for review a "`manifest error affecting a constitutional right'."[4]State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995) (quoting RAP 2.5(a)(3)). Kirwin must "identify a constitutional error and show how, in the context of the trial, the alleged error actually affected [his] rights." Id. (citing State v. Scott, 110 Wash.2d 682, 688, 757 P.2d 492 (1988)). It is proper to "preview" the merits of the constitutional argument to determine whether it is likely to succeed. State v. Walsh, 143 Wash.2d 1, 8, 17 P.3d 591 (2001) (citing State v. WWJ Corp., 138 Wash.2d 595, 603, 980 P.2d 1257 (1999)). As a threshold matter, we address whether Kirwin has met his burden to prove a constitutional error occurred.
*1047 ¶ 7 We presume a warrantless search violates both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution. State v. Day, 161 Wash.2d 889, 893-94, 168 P.3d 1265 (2007). The State bears the burden to prove that one of the narrowly drawn exceptions to the warrant requirement validates the warrantless search. Id.; State v. Vrieling, 144 Wash.2d 489, 492, 28 P.3d 762 (2001). One such exception is a search conducted incident to arrest. Vrieling, 144 Wash.2d at 492, 28 P.3d 762. The arrest must be a lawful custodial arrest to justify a warrantless search. State v. Moore, 161 Wash.2d 880, 885, 169 P.3d 469 (2007); State v. O'Neill, 148 Wash.2d 564, 585, 62 P.3d 489 (2003). An arrest provides the legal authority required by article I, section 7 of the Washington State Constitution. O'Neill, 148 Wash.2d at 585, 62 P.3d 489. If the State obtains the evidence without the authority of law, then the evidence is not admissible in court. Day, 161 Wash.2d at 894, 168 P.3d 1265. Kirwin's sole challenge to the search is that Officer Pearce lacked authority of law because the ordinance under which he arrested Irwin conflicts with the state statute.[5] Therefore, the sole issue before this court is whether the littering ordinance unconstitutionally conflicts with the littering statute.[6]
¶ 8 The city ordinance and state statute prohibiting littering contain virtually identical language.[7] The city ordinance, however, imposes a harsher penalty for littering than does the state statute. Under OMC 9.64.010, littering is a criminal misdemeanor subjecting the violator to the possibility of time in jail and a fine. Under the state statute, littering in an amount equal to or less than one cubic foot is a class three civil infraction. RCW 70.93.060(2)(a). The maximum and default penalty for littering under state law is $50. RCW 7.80.120(1)(c).
¶ 9 We presume an ordinance is valid unless the challenger can prove the ordinance is unconstitutional. City of Pasco v. Shaw, 161 Wash.2d 450, 462, 166 P.3d 1157 (2007); HJS Dev., Inc. v. Pierce County, 148 Wash.2d 451, 477, 61 P.3d 1141 (2003); Heinsma v. City of Vancouver, 144 Wash.2d 556, 561, 29 P.3d 709 (2001). An ordinance may be deemed invalid in two ways: (1) the ordinance directly conflicts with a state statute or (2) the legislature has manifested its intent to preempt the field. Heinsma, 144 Wash.2d at 561, 29 P.3d 709; see also Chaney v. Fetterly, 100 Wash.App. 140, 149, 995 P.2d 1284 (2000). Article XI, section 11 of our state constitution allows local governments to create "such local police, sanitary and other regulations as are not in conflict with general law." A local regulation conflicts with state law where it permits what state law forbids or forbids what state law permits. Parkland Light & Water Co. v. Tacoma-Pierce County Bd. of Health, 151 *1048 Wash.2d 428, 433, 90 P.3d 37 (2004); see also City of Seattle v. Eze, 111 Wash.2d 22, 33, 759 P.2d 366 (1988) (holding that no conflict existed between a city ordinance and state statute where "`the ordinance goes farther in its prohibitionbut not counter to the prohibition under the statute. The city does not attempt to authorize by this ordinance what the Legislature has forbidden; nor does it forbid what the Legislature has expressly licensed, authorized, or required'" (internal quotation marks omitted) (quoting City of Bellingham v. Schampera, 57 Wash.2d 106, 111, 356 P.2d 292 (1960))). The focus of this inquiry, therefore, is on the substantive conduct proscribed by the two laws. A conflict arises when the two provisions are contradictory and cannot coexist. Parkland Light, 151 Wash.2d at 433, 90 P.3d 37. If an ordinance conflicts with a statute, the ordinance is invalid. Id. at 434, 90 P.3d 37.
¶ 10 An ordinance may also be invalid where the legislature has indicated its intent to preempt the field. HJS Dev., 148 Wash.2d at 477, 61 P.3d 1141. If the legislature is silent, the court considers both "`the purposes of the statute and . . . the facts and circumstances upon which the statute was intended to operate.'" Heinsma, 144 Wash.2d at 561, 29 P.3d 709 (alteration in original) (quoting Brown v. City of Yakima, 116 Wash.2d 556, 560, 807 P.2d 353 (1991)). However, we "`will not interpret a statute to deprive a municipality of the power to legislate on a particular subject unless that clearly is the legislative intent.'" HJS Dev., 148 Wash.2d at 480, 61 P.3d 1141 (quoting Trimen Dev. Co. v. King County, 124 Wash.2d 261, 270, 877 P.2d 187 (1994)); see, e.g., Schampera, 57 Wash.2d at 118, 356 P.2d 292 (holding an ordinance may not impose a penalty in excess of the penalties a first class city is allowed to assess under former RCW 35.22.470 (1923), repealed by LAWS OF 1965, Ex.Sess., ch. 116, § 9).
¶ 11 The ordinance and the statute at issue here prohibit the same behavior littering. Kirwin correctly observes the ordinance designates littering as an offense subject to arrest while the state statute does not. This difference, however, does not create an impermissible direct conflict; the focus of the article XI, section 11 inquiry is on the conduct proscribed by the two laws (a question of substance), not their attendant punishments (a question of magnitude).[8] The two laws coexist because, although the degree of punishment differs, their substance is nearly identical and therefore an irreconcilable conflict does not arise. Because there is no direct conflict, unless the state littering statute expresses intent to preempt local entities from either proscribing littering or setting their own degrees of punishment for littering, then the ordinance will survive scrutiny under article XI, section 11.
¶ 12 Preemption occurs "where there is express legislative intent to preempt the field or such intent appears by necessary implication." Rabon v. City of Seattle, 135 Wash.2d 278, 289, 957 P.2d 621 (1998). There is no indication from the legislature that it intended to preempt the littering ordinance or its penalty. To the contrary, RCW 70.93.020 demonstrates the legislature's intent not to preempt local ordinances. RCW 70.93.020 states the "intent of this chapter is to add to and to coordinate existing recycling and litter control and removal efforts and not terminate or supplant such efforts." (Emphasis added.) To read the state statute as establishing exclusive state authority on the proscription of littering or the punishment of littering, rather than concurrent authority, would be contrary to the clear language of the statute.
¶ 13 In light of these considerations, the littering ordinance neither conflicts with nor is preempted by the littering statute. By failing to undermine the validity of the littering *1049 ordinance, Kirwin has failed to demonstrate that the arrest of Irwin under the ordinance was invalid and, by extension, the search incident to the arrest was invalid. Accordingly, Kirwin has not met his burden of showing a manifest error affecting his constitutional rights under the Fourth Amendment or article I, section 7.

IV. CONCLUSION
¶ 14 We hold Kirwin has not demonstrated any manifest constitutional error on appeal because the littering ordinance does not unconstitutionally conflict with the littering statute. We affirm the Court of Appeals.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, CHAMBERS, OWENS, and J. JOHNSON, JJ.
MADSEN, J. (concurring).
¶ 15 The majority concludes that Olympia Municipal Code (OMC) 9.64.010 is a valid ordinance criminalizing littering, the offense for which Casey Irwin was arrested, and therefore law enforcement officers lawfully arrested him and conducted a lawful search incident to arrest. The majority reasons that the ordinance is valid because it does not conflict with state statutes that make littering of the kind that occurred here a civil infraction, punishable by a $50 fine. But I question the majority's conclusion. First, under a line of cases that has not been overruled, if a statute and an ordinance define the same conduct but carry different punishments, thus presenting the arresting and charging authorities with discretion to charge under the law imposing the greater penalty, a violation of article I, section 12 of the Washington State Constitution results. Second, while the constitution bars enforcement of a local law if it conflicts with a state statute, nothing in the constitution limits invalidity to conflicts about substantive behavior as the majority concludes. And indeed, the Court of Appeals has held that an ordinance imposing a greater penalty than a state statute prohibiting the same conduct is invalid under this analysis.
¶ 16 Despite these serious concerns about the legitimacy of the ordinance under the constitution, the defendant has not presented the first of these arguments. Therefore, the court should decide this case on narrower grounds. Judicial restraint is particularly important because aside from the uncertainty under article I, section 12, the majority's sweeping holding that there is no conflict between the ordinance and the state statute will validate all other ordinances that presently exist or may be enacted with greater penalties than identical state statutes.
¶ 17 The validity of the arrest and search incident to arrest can be determined without deciding whether OMC 9.64.010 itself is valid. The ordinance was presumptively valid at the time Mr. Kirwin was arrested, and it was not so grossly or flagrantly unconstitutional that a reasonably prudent person would recognize its flaws. Thus, an arrest under the ordinance supported by probable cause gave the officer the authority to arrest and therefore to conduct a warrantless search incident to that arrest.
¶ 18 In accord with principles of judicial restraint the better course is to refrain from passing on the validity of the ordinance and instead uphold the search on the basis of the presumptive validity of the ordinance.

Analysis
¶ 19 A line of cases decided under article I, section 12 casts doubt on the validity of the ordinance. Years ago the court held that the Fourteenth Amendment to the United States Constitution and article I, section 12 are violated by a statute that prescribes different punishments for the same act committed under like circumstances by individuals in like situations. Olsen v. Delmore, 48 Wash.2d 545, 295 P.2d 324 (1956). In Olsen, the penalty section of an act vested discretion in prosecuting officials to charge a violation either as a gross misdemeanor or a felony, and it was declared unconstitutional. In State v. Zornes, 78 Wash.2d 9, 475 P.2d 109 (1970), the court reasoned that the same constitutional invalidity occurs when two operative statutes provide for the same type of discretion.
¶ 20 This constitutional analysis was applied by both this court and the Court of *1050 Appeals and was applied when two separate but identical criminal statutes provided for different penalties, even if both were misdemeanors. It was also applied when a local ordinance provided for a greater penalty than an identical state statute. In State v. Mason, 34 Wash.App. 514, 663 P.2d 137 (1983), for example, a statute and a Seattle ordinance defined the same crime, with the same elements, but provided for different punishments. The court observed that "[w]here two criminal statutes are defined with exactly the same elements, any purposeful discretion exercised by the charging authority, or by the arresting officer . . . could be based only on consideration of the possible penalty involved." Id. at 519, 663 P.2d 137. The court reasoned that a Seattle police officer could exercise unfettered discretion and bring a felony or misdemeanor charge for the same offense, in violation of article I, section 12 and the Fourteenth Amendment. Id. at 520, 663 P.2d 137;[1]see also City of Seattle v. Hogan, 53 Wash.App. 387, 766 P.2d 1134 (1989); State v. Martell, 22 Wash.App. 415, 416-18, 591 P.2d 789 (1979). In Hogan, 53 Wash.App. at 391-92, 766 P.2d 1134, the court distinguished some cases on the ground that the court, and not the prosecutor, elected which of a range of punishments were to be imposed, and others on the ground that objective standards existed to govern the exercise of discretion at the charging stage. The court held, however, that application of a Seattle ordinance scheme violated equal protection to the extent it permitted greater punishment for attempted vehicle prowl than the applicable state statute. Id. at 392, 766 P.2d 1134. The court held the ordinance could be enforced only to the extent it was within statutory limitations. An attorney general opinion similarly concluded that because counties derive their authority from the state, both are considered a single entity for equal protection purposes and "a county would not be permitted to enforce an ordinance prescribing a different penalty for the commission of a county offense than is prescribed under state law for the same criminal act." 1993 Op. Att'y Gen. No. 11, 1993 WL 290225, at *5 n. 4.[2]
¶ 21 In City of Kennewick v. Fountain, 116 Wash.2d 189, 802 P.2d 1371 (1991), the court observed that United States v. Batchelder, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), overruled Zornes insofar as it had held that equal protection under the Fourteenth Amendment was violated by acts defining the same offense but prescribing different punishments. As the court subsequently reiterated, Batchelder "overrules Zornes as to analysis under the Fourteenth Amendment." In re Pers. Restraint of Boot, 130 Wash.2d 553, 574, 925 P.2d 964 (1996).
¶ 22 The question that remains, of course, is whether the Olsen-Zornes line of cases is still viable insofar as article I, section 12 is concerned.[3] The present status of the rule under the state constitution is uncertain. This court has not overruled the cases to the extent they rely on article I, section 12. Also in question is the result if an ordinance criminalizes what is a civil infraction under a state statute and imposes a far greater punishment than the fines imposable under the state statutewhether the ordinance is invalid or, as held in Hogan, invalid only to the extent the penalties exceed those imposed under state law.
¶ 23 I believe the uncertainty engendered by this line of cases dictates that in the absence of briefing on the impact of article I, section 12, the court should refrain from declaring an ordinance valid when it has penalties that exceed those under an essentially identical state statute.
*1051 ¶ 24 The second reason I depart from the majority is because it applies an incorrect standard when determining the validity of the ordinance. A city can enact an ordinance that prohibits and punishes the same acts that constitute an offense under a state statute provided the ordinance does not conflict with state law and the state law does not show that it was intended to be exclusive. City of Bellingham v. Schampera, 57 Wash.2d 106, 109, 356 P.2d 292 (1960). The rule is derived from article XI, section 11 of the state constitution. Id. The majority says that the conflict principle applies only with respect to substantive conduct. But none of the cases cited by the majority contain the limitation announced by the majority. And the majority's quotation of City of Seattle v. Eze, 111 Wash.2d 22, 33, 759 P.2d 366 (1988), majority at 1048, is of a portion of the court's discussion about an ordinance that in fact prohibited a wider scope of activity than state law. Eze simply fails to address the issue here. The majority does not cite any authority actually holding that only substantive conduct is relevant. Contrary to the majority's belief, it is equally sensible to say that a conflict exists where a local law permits penalties that a state law forbids or forbids penalties that state law permits.
¶ 25 Mason demonstrates the point. In Mason, in addition to considering article I, section 12, the Court of Appeals also analyzed the ordinance at issue to determine whether state law preempted it. The ordinance and a state statute both proscribed the crime of promoting prostitution. The court recited that an ordinance is in conflict with state law if it prohibits what the state law permits, or vice versa, and said that the Seattle ordinance
effectively contravenes the penalty provisions chosen by the Legislature to punish the crime of promoting prostitution in the second degree. We conclude that the Legislature intended, by passing the criminal code, to make the grading and punishment of serious criminal offenses a matter of state control. The Seattle ordinance is thus "in conflict" with the State criminal code.
State law prevails and local law must fall where there is an irreconcilable conflict. In such a case, the local law is preempted to the extent that an actual conflict exists.
Mason, 34 Wash.App. at 521, 663 P.2d 137. Mason was subsequently distinguished, but not disapproved, in State v. Lewis, 115 Wash.2d 294, 300, 797 P.2d 1141 (1990).
¶ 26 A similar analysis can be applied here. By making littering of the type at issue here a civil infraction, punishable by a civil fine, the legislature has chosen what penalty is to be applied. Under the analysis set out in Mason, the penalties under the ordinance conflict with state law.
¶ 27 In light of these legal theories, the validity of the city ordinance is seriously in question. Unfortunately, the briefing does not raise or thoroughly address one of these theories. But because it so obviously exists, the court's better course is to refrain from declaring the ordinance valid and resolve this case on other, firmer grounds.
¶ 28 As mentioned, I concur in the majority's result because the arrest was made pursuant to a presumptively valid statute.
¶ 29 In Michigan v. DeFillippo, 443 U.S. 31, 38, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), the United States Supreme Court held that an arrest under a statute that is valid at the time of the arrest and supported by probable cause remains valid even if the basis for the arrest is later held unconstitutional. A "narrow exception" is recognized when the law is "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." DeFillippo, 443 U.S. at 37-38, 99 S.Ct. 2627. Mr. Kirwin contends, however, that the rule in DeFillippo cannot be applied because it was rejected in State v. White, 97 Wash.2d 92, 640 P.2d 1061 (1982), where the court declined under article I, section 7 to adopt a good faith exception for arrests made under an unconstitutional statute. He also cites State v. Chenoweth, 160 Wash.2d 454, 472 n. 14, 158 P.3d 595 (2007), as acknowledging that Washington has not adopted a good faith exception to the warrant requirement.[4]
*1052 ¶ 30 The opinion in White is somewhat confusing because the three parts of the court's analysis are seemingly inconsistent. The first section concludes that the statute at issue was not presumptively valid because it was so grossly and flagrantly unconstitutional that a reasonably prudent person would see its flaws, i.e., the court applied the exception DeFillippo carved out to the good faith rule. The court does not identify in this section whether its analysis was under the Fourth Amendment or the state constitution or both. The second section deals with the reasonableness standard under the Fourth Amendment and expressly includes "Fourth Amendment" in the heading. White, 97 Wash.2d at 104, 640 P.2d 1061. The final section's heading is "Const. art. 1, § 7 provides broader protection than the Fourth Amendment" and concludes that the exclusionary rule must be applied whenever an individual's right to privacy is unreasonably invaded. White, 97 Wash.2d at 108, 111-12, 640 P.2d 1061.
¶ 31 On the one hand, it is arguable that the first section of the opinion is dispositive, particularly given that it does not in any way indicate that it is limited to an analysis under the federal constitution and does not contain in its heading any indication of the scope of the discussion. If so, the balance of the opinion was unnecessary to the court's decision and thus dicta. On the other hand, the third section appears to hold, as argued by Mr. Kirwin and observed in Chenoweth, that the court rejected the rule of DeFillippo under the state constitution.
¶ 32 But whatever its meaning, subsequent events have overtaken White and it is now clear that the court has adopted the rule of presumptive validity under article I, section 12. In State v. Potter, 156 Wash.2d 835, 132 P.3d 1089 (2006), the defendants maintained that they were unlawfully arrested for driving while their licenses were suspended because, subsequent to their arrests, this court held that the statutory procedures by which the Department of Licensing suspended licenses were unconstitutional. See City of Redmond v. Moore, 151 Wash.2d 664, 91 P.3d 875 (2004). The defendants in Potter contended that under article I, section 7 evidence of controlled substances found in their vehicles during searches incident to their arrests had to be suppressed as a result of the illegal arrests.
¶ 33 In a unanimous decision, we applied the DeFillippo rule under article I, section 7, and held that an arrest under a statute valid at the time of the arrest and supported by probable cause remains valid even if the basis for the arrest is later found unconstitutional. Potter, 156 Wash.2d at 843, 132 P.3d 1089. We also said:
In White, we held that a stop-and-identify statute was unconstitutionally vague and, applying the United States Supreme Court's exception to the general rule from DeFillippo, excluded evidence under that narrow exception for a law "`so grossly and flagrantly unconstitutional'" that any reasonable person would see its flaws.
Potter, 156 Wash.2d at 843, 132 P.3d 1089 (quoting White, 97 Wash.2d at 103, 640 P.2d 1061 (quoting DeFillippo, 443 U.S. at 38, 99 S.Ct. 2627)). We concluded that the exception did not apply to the defendants' cases. With respect to the statute criminalizing driving while license suspended, we noted that the statute that made it unlawful to drive while license suspended remained a valid statute, unlike the statute held unconstitutional in White. Then, with respect to the statutory licensing procedures held unconstitutional in Moore, we reasoned that unlike the circumstances in White, there were no prior cases holding that license suspension procedures in general were unconstitutional and therefore these statutory provisions were not grossly and flagrantly unconstitutional. Id.
¶ 34 Similarly, in State v. Brockob, 159 Wash.2d 311, 341-42, 150 P.3d 59 (2006), one of the defendants contended that his arrest for driving while his license was suspended and a search incident to that arrest were unlawful for the same reason claimed in Potter. The defendant also relied on White. The court rejected the defendant's argument, stating that

*1053 White held that police officers may rely on the presumptive validity of statutes in determining whether there is probable cause to make an arrest unless the law is "`so grossly and flagrantly unconstitutional' by virtue of a prior dispositive judicial holding that it may not serve as the basis for a valid arrest."
Brockob, 159 Wash.2d at 341 n. 19, 150 P.3d 59 (quoting White, 97 Wash.2d at 103, 640 P.2d 1061 (quoting DeFillippo, 443 U.S. at 38, 99 S.Ct. 2627)). As in Potter, the court held that the exception did not apply "because no law relating to driver's license suspensions had previously been struck down." Brockob, 159 Wash.2d at 341 n. 19, 150 P.3d 59.
¶ 35 While Potter and Brockob may have overlooked the third section in White and the discussion under article I, section 12, these cases nevertheless have had the effect of overruling White (unanimously, in Potter) insofar as White can be read to reject the DeFillippo rule.
¶ 36 Applying the analysis from DeFillippo, Potter, and Brockob, the littering ordinance was presumptively valid at the time Irwin was arrested, regardless of any potential constitutional infirmity. Nor, assuming any unconstitutionality, does it appear the exception would apply, i.e., there does not appear to be gross or flagrant unconstitutionality. Accordingly, the search incident to arrest should be upheld because the arrest was lawful under a presumptively valid ordinance.

Conclusion
¶ 37 I am troubled by the majority's unsupported narrowing of the analysis for determining conflict in laws. There is no authority that limits the analysis to substantive conduct, contrary to the majority's belief. I am also troubled because there is a line of authority that casts doubt on the ordinance's constitutionality. But because this line of authority and the legal theories it involves are not addressed by the briefing, it should not be the basis for the court's decision. Given that it exists, however, I believe the better course is to refrain from ruling on the validity of the ordinance and instead decide this case under a more limited analysis. As the State maintains, the ordinance was presumptively valid at the time of the arrest and was therefore authority for the arrest and the search incident to arrest.
¶ 38 I concur in the result reached by the majority.
I CONCUR: STEPHENS, J.
SANDERS, J. (dissenting).
¶ 39 The majority permits the State to search an automobile incident to the arrest of a passenger for littering, even though state law did not authorize the arrest. I disagree. The arrest of a passenger in a car does not automatically authorize the police to search a car being driven by, and belonging to, another individual. And, even if the arrest of the passenger could justify the search of the car, the arrest of the passenger here was invalid and could not be used to justify any search. The arrest was invalid because the police officer arrested the passenger under a local ordinance that imposed a significantly greater penalty than a state statute prohibiting the same conduct. Such a conflict in punishment is unconstitutional, as held under a line of cases this court has not overruled but inexplicably does not follow today. Therefore, I would hold the search was unconstitutional, suppress the evidence, and remand the case to the trial court.
¶ 40 A warrantless search is presumed unconstitutional. State v. Johnson, 128 Wash.2d 431, 446-47, 909 P.2d 293 (1996). "Exceptions to this requirement are narrowly drawn. The State bears a heavy burden in showing that the search falls within one of the exceptions." State v. Jones, 146 Wash.2d 328, 335, 45 P.3d 1062 (2002) (citations omitted).
¶ 41 The State relies upon the search incident to arrest exception. "[A] search incident to arrest is a well-recognized exception to the warrant requirement." Id. For the exception to apply, the search must be limited in scope to the purposes underlying the rule: maintaining officer safety and preventing destruction of evidence. Id. This court has also observed that because of the heightened privacy protection under article I, section *1054 7 of the Washington State Constitution, "`we do not believe that these exigencies always allow a search.'" Id. (quoting State v. Stroud, 106 Wash.2d 144, 151, 720 P.2d 436 (1986) (holding that incident to the arrest of the driver, an officer may search the passenger compartment under the driver's immediate control)). The search must also be incident to a valid arrest. State v. Moore, 161 Wash.2d 880, 885, 169 P.3d 469 (2007). But none of these criteria was met here.
¶ 42 First, the search was not properly limited to the purposes underlying the Stroud rulepreserving officer safety and preventing destruction of evidence. It is important to note Dennis Kirwin was driving the car, whereas it was his passenger, Casey Irwin, upon whose arrest for littering the State attempts to justify the search of the car. The Court of Appeals has improperly extended Stroud to justify a warrantless search of an automobile following the arrest of a passenger who does not own the car. See, e.g., State v. Bello, 142 Wash.App. 930, 176 P.3d 554 (2008); State v. Hill, 68 Wash. App. 300, 842 P.2d 996 (1993); State v. Cass, 62 Wash.App. 793, 816 P.2d 57 (1991). Apparently the majority accepts this extension, without analysis and without regard to who was arrested, to opine "[a]n arrest provides the legal authority" for the warrantless search. Majority at 1047 (citing State v. O'Neill, 148 Wash.2d 564, 585, 62 P.3d 489 (2003)). Moreover, we have repeatedly observed that "locked containers within a vehicle may not be searched incident to an occupant's arrest." Jones, 146 Wash.2d at 335, 45 P.3d 1062 (citing State v. Fladebo, 113 Wash.2d 388, 779 P.2d 707 (1989)). Chief Justice Alexander, while serving on the Court of Appeals, very persuasively argued the arrest of a passenger is not a per se justification for a warrantless search. Cass, 62 Wash.App. at 798, 816 P.2d 57 (Alexander, J., dissenting). He opined the search of a vehicle following the arrest of a passenger is valid only where it "is to discover weapons that might be used against the officers and to prevent destruction of evidence by the arrestee of the crime for which he is arrested." Id. at 799, 816 P.2d 57 (citing New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)). He argued that in addition to the vehicle owner's legitimate expectation of privacy under the heightened protection of article I, section 7,
[i]t seems obvious and almost beyond debate that the property rights of persons who are not under arrest should be accorded more sanctity than should the property rights of persons under arrest. We should be slower, therefore, to disturb the personal affairs and property rights of persons who are not under arrest.
Id. at 798-99, 816 P.2d 57. Therefore, to justify the search of an innocent party's vehicle incident to another's arrest, the search must be strictly tied to the purposes the rule was intended to serve.
¶ 43 But the State presents no evidence that searching Kirwin's car was necessary to protect the officer, nor that it was necessary to prevent destruction of evidence of Irwin's purportedly criminal act of littering. Irwin could not reach any weapons after his arrest and detention in the patrol vehicle, nor was there any indication there was any evidence of Irwin's littering contained in the vehicle. Because the State presented no such evidence, it has failed to carry its "heavy burden in showing that the search falls within one of the exceptions." Jones, 146 Wash.2d at 335, 45 P.3d 1062.
¶ 44 Furthermore, even if the search of a vehicle could be justified by the arrest of a passenger, the search at issue was not incident to a valid arrest. The State argues, and the majority agrees, Irwin was properly arrested under an Olympia city ordinance. Majority at 1048-49. The majority holds the ordinance does not conflict with a state statute on littering because the two "prohibit the same behaviorlittering." Id. at 1048. Although this is undoubtedly true, this fails to properly conceive the issue.
¶ 45 Kirwin does not complain the two laws conflict because they prohibit different behavior, but instead he argues the laws conflict on the penalty for the prohibited behavior, which they clearly and directly do. The Olympia ordinance classifies littering as a misdemeanor, for which the police may arrest offenders. Olympia Mun.Code (OMC) 9.40.110(C) ("Any person violating any provisions *1055 of this section is guilty of a misdemeanor.. . ."). By contrast, the state statute provides littering in small quantities is a civil infraction for which no arrest may be made. RCW 70.93.060(2)(a) ("[I]t is a class 3 civil infraction as provided in RCW 7.80.120 for a person to litter in an amount less than or equal to one cubic foot."). These two laws cannot be read as anything other than discordant.[1] They clearly conflict on the punishment available for the act of littering. Justice Madsen argues correctly in her concurrence that under a long line of cases, if a state statute and an ordinance define the same prohibited conduct, but carry different punishments and present authorities with discretion to arrest or charge under the law imposing the greater penalty, an equal protection violation of article I, section 12 results.[2] Concurrence at 1048-49. "A statutory scheme permitting such discretion is unconstitutional." State v. Mason, 34 Wash.App. 514, 519, 663 P.2d 137 (1983); id. at 516-21, 663 P.2d 137 (analyzing disparities in penalties for prostitution under equal protection as provided by the Fourteenth Amendment to the United States Constitution; article I, section 12 of the Washington Constitution; and state preemption); see also City of Seattle v. Hogan, 53 Wash.App. 387, 766 P.2d 1134 (1989).[3] Justice Madsen also points out that "[b]y making littering of the type at issue here a civil infraction, punishable by a civil fine, the legislature has chosen what penalty is to be applied." Concurrence at 1052 (analogizing to Mason, 34 Wash.App. at 521, 663 P.2d 137).[4]
¶ 46 Since OMC 9.40.110(C) allows arrest of a litterer and RCW 70.93.060(2)(a) does not, the statute controls and Irwin's arrest was invalid because when a local ordinance conflicts with a state statute, the local ordinance is invalid and the statute controls.[5] *1056 See Parkland Light & Water Co. v. Tacoma-Pierce County Bd. of Health, 151 Wash.2d 428, 434, 90 P.3d 37 (2004) (citing Const. art. XI, § 11).
¶ 47 Under the state statute, littering is a class 3 civil infraction punishable by a fine of up to $50. RCW 7.80.120(1)(c). A civil infraction cannot justify an arrest; therefore Irwin's arrest was invalid. Since Irwin's arrest was invalid, there can be no search incident to his arrest, much less a search of the vehicle Kirwin was driving. Likewise, Kirwin's consent to the search of the truck's locked center console did not remedy the unconstitutionality of the search. We have said that an invalid detention vitiates consent for a search under similar circumstances. State v. Armenta, 134 Wash.2d 1, 12-13, 17-18, 948 P.2d 1280 (1997) (noting State v. Tijerina, 61 Wash.App. 626, 811 P.2d 241 (1991) (holding an invalid detention, beyond what was required for a traffic infraction, vitiated consent for a search since consent would not have been obtained otherwise)).[6]
¶ 48 Because the search of the truck Kirwin was driving was outside the scope of a legitimate search incident to arrest and was, moreover, not even incident to a valid arrest, the warrantless search was unconstitutional. The case should properly be remanded with instructions to suppress the fruit of the unconstitutional search.
¶ 49 I dissent.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The Fourth Amendment to the United States Constitution protects an individual from unreasonable searches and seizures by the government. U.S. CONST. amend. IV.
[3] The Washington State Constitution requires authority of law before the State may intrude into the private affairs of an individual. WASH. CONST. art. I, § 7.
[4] The Court of Appeals concluded Kirwin failed to meet this standard with regard to his ineffective assistance of counsel claim. Kirwin, 137 Wash.App. at 393, 153 P.3d 883.
[5] Although the dissent raises the issue of whether State v. Stroud, 106 Wash.2d 144, 720 P.2d 436 (1986) justifies a warrantless search of an automobile following the arrest of a passenger, Kirwin does not raise this issue and the court similarly abstains from doing so. Here, Kirwin consented to the search of the locked center console of the truck.
[6] We do not address the issue of whether the littering statute and littering ordinance implicate a potential violation of article I, section 12 of the Washington State Constitution. As Justice Madsen indicates in her concurrence, Kirwin did not raise an article I, section 12 challenge, and it would be unwise to resolve the issue without the benefit of full briefing. Nothing precludes a future challenge on article I, section 12 grounds to the ordinance at issue or other ordinances that impose greater penalties than essentially identical state statutes.
[7] OMC 9.40. 110 provides:

No person shall throw, drop, deposit, discard, or otherwise dispose of litter, as that term is defined in RCW 70.93.030(4), upon any public property within the city or upon private property within the city not owned by him or in the waters of the city whether from a vehicle or otherwise, including but not limited to any sidewalk, street, alley, highway or park, except [in areas designated for waste].
The state littering statute, RCW 70.93.060, uses nearly identical language:
(1) It is a violation of this section to abandon a junk vehicle upon any property. In addition, no person shall throw, drop, deposit, discard, or otherwise dispose of litter upon any public property in the state or upon private property in this state not owned by him or her or in the waters of this state whether from a vehicle or otherwise including but not limited to any public highway, public park, beach, campground, forest land, recreational area, trailer park, highway, road, street, or alley except [in areas designated for waste].
[8] This does not mean that an ordinance's attendant punishment can never violate article XI, section 11, However, it is generally more sound to analyze the issue under the preemption prong rather than the direct conflict prong. Attendant penalties will generally matter only if a state statute has disabled local entities from setting their own levels of punishment either by directly stating so in the statute or the language of the statute necessarily expresses intent to establish exclusive authority. See, e.g., City of Tacoma v. Luvene, 118 Wash.2d 826, 827 P.2d 1374 (1992) (the Uniform Controlled Substances Act, ch. 69.50 RCW, only preempted local entities from setting their own degrees of punishment for violations of the act).
[1] As explained below in the text, the ordinance at issue in Mason was invalidated on preemption grounds.
[2] As explained immediately below, this conclusion is flawed insofar as the federal constitution is concerned.
[3] In an unpublished opinion (which therefore may not be cited as authority, see GR 14.1(a)), the Court of Appeals engaged in a Gunwall analysis (see State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986)) and then determined that the state constitution provides greater protection in this context than the equal protection clause. The court concluded that Zornes remains good law under article I, section 12. Anderson v. Wilson, noted at 94 Wash.App. 1015, 1999 WL 95993.
[4] He concedes that the statement in Chenoweth was not necessary to the disposition of the case before the court.
[1] It is important to note this case presents a different scenario than was considered in Brown v. City of Yakima, 116 Wash.2d 556, 807 P.2d 353 (1991). There the state statute provided that its prohibition represented a minimum standard that cities were free to exceed. Id. at 562, 807 P.2d 353. But there is no such provision in the statute at issue here.
[2] Justice Madsen argues persuasively and extensively that the Olympia ordinance is likely invalid under the state constitution. Concurrence at 1048-51, 1053. "I am troubled by the majority's unsupported narrowing of the analysis for determining conflict in laws. . . . I am also troubled because there is a line of authority that casts doubt on the ordinance's constitutionality." Id. at 1053. While I agree with this analysis, I disagree with Justice Madsen's ultimate conclusion that because the parties did not brief this line of authority, we should disregard it and still concur with the majority's result. Id. Both the Court of Appeals in its published decision and the majority here address whether the Olympia ordinance is unconstitutional. See State v. Kirwin, 137 Wash.App. 387, 395, 153 P.3d 883 (2007) ("Municipal codes often prescribe penalties greater than State law, but we do not find one case in which a court has found that this difference renders the ordinance unconstitutional."); majority at 1047-49. Furthermore, I disagree with Justice Madsen's assertion, also advanced by the Court of Appeals, that regardless of the ordinance's constitutionality, the arrest and the search should be upheld because the ordinance was presumptively valid in the arresting officer's eyes. Kirwin, 137 Wash.App. at 395, 153 P.3d 883; concurrence at 1053. Where "an arrest is based on an unconstitutional statute, a constitutional violation clearly exists because of the demonstrable absence of `authority of law' to justify the search or arrest." State v. Chenoweth, 160 Wash.2d 454, 472-73, 158 P.3d 595 (2007) (referring to Const. art. I, § 7, "No person shall be disturbed in his private affairs . . . without authority of law.").
[3] Both Mason, 34 Wash.App. 514, 663 P.2d 137, and Hogan, 53 Wash.App. 387, 766 P.2d 1134, distinguished United States v. Batchelder, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), a case which Justice Madsen cites as possibly raising questions about their reliability. Concurrence at 1050. Batchelder held a conviction under one of two overlapping statutes that authorized different maximum punishments did not violate equal protection under the Fourteenth Amendment. But in Batchelder, the laws at issue were not coextensive. See Hogan, 53 Wash.App. at 390, 766 P.2d 1134 (citing Mason, 34 Wash.App. at 518-19, 663 P.2d 137, and distinguishing Batchelder, 442 U.S. 114, 99 S.Ct. 2198).
[4] See also supra note 1. In contrast, the state statute in Brown, 116 Wash.2d at 560, 807 P.2d 353, expressly provided cities were free to exceed its standard.
[5] The majority also asserts, "We presume an ordinance is valid unless the challenger can prove the ordinance is unconstitutional." Majority at 1051 (citing among other cases Heinsma v. City of Vancouver, 144 Wash.2d 556, 561, 29 P.3d 709 (2001)). I first note that Heinsma improperly relied upon City of Bothell v. Gutschmidt, 78 Wash.App. 654, 660, 898 P.2d 864 (1995), for this incorrect assertion. In Gutschmidt the court presumed ordinances are validly enacted, not constitutional. Id. Moreover, as I have previously detailed at Island County v. State, 135 Wash.2d 141, 155-70, 955 P.2d 377 (1998) (Sanders, J., concurring), such a presumption of constitutionality is improper, and this court should not continue to propagate this presumption without analysis.
[6] As in Armenta, 134 Wash.2d 1, 948 P.2d 1280, and Tijerina, 61 Wash.App. 626, 811 P.2d 241, Kirwin consented to the search soon after the invalid detention and without the benefit of Miranda warnings. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).