IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint Petition of: | ) ) ) | No. 81210-6-I (Consolidated with No. 81211-4-I) |
| JON MAJOR, aka, JOZUA HFVAK, | ) ) | DIVISION ONE |
| Petitioner. | ) ) ) ) | UNPUBLISHED OPINION |

HAZELRIGG, J. — Jon Major[1] seeks discretionary review of his motion for a new trial under CrR 7.8, which was transferred to this court as a personal restraint petition. Major primarily alleges that the trial court improperly transferred his motion as time-barred, but also argues a number of purported discovery violations and misconduct by the State prejudiced him at trial, and seeks reversal. Because Major fails to meet his burden of demonstrating a Constitutional violation which caused him prejudice, we deny his personal restraint petition.

FACTS

On December 6, 2018, Jon Major was found guilty of commercial sexual abuse of a minor and possession of depictions of a minor engaged in sexually explicit conduct. Major appeared pro se at his jury trial. Throughout the pendency

_____

[1] Major uses the name Jozua Hfvak in his pleadings at the trial court and on appeal. The record demonstrates that he asked the trial court to utilize Hfvak (or only his initials), but the request was denied based on the fact that his legal name is Jon Major. As such, we use his legal name in this opinion.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

of his case, Major alleged there was a conspiracy against him by the Seattle Police Department (SPD), the prosecutors, and various witnesses. Major alleged that the then-17-year old victim, G.W., falsely accused Major of paying G.W. $500 to perform oral sex, that Seattle Police Detective Maurice Washington falsified his report summarizing the accusation, and that the King County Prosecutor's Office pursued charges based on evidence it knew was false.

On April 15, 2019, Major made a public disclosure request to the SPD seeking records related to a report by Washington purported to summarize an interview with G.W.'s parents. Specifically, Major sought a report that he believed was written by Washington and referenced a statement by G.W. to his parents that he received hickeys from "a girl in Tacoma." Major also requested records related to an interview of G.W. that Washington conducted. SPD responded in writing that it had records responsive to Major's requests that would be released upon payment of certain processing fees. Major paid only for the transcript of the interview with G.W.

Based on this information, Major filed a motion for a new trial pursuant to CrR 7.8 on January 24, 2020. He attached a portion of the transcript of G.W.'s interview to the motion. The trial court made two findings: first, that Major had failed to make a substantial showing that he was entitled to relief and second, that Major's motion was time-barred. The court checked the box on its order stating Major's motion was time-barred and transferred it to this court as a personal restraint petition. On March 4, 2020, Major filed a notice for discretionary review

of the superior court's transfer. This Court consolidated the request for discretionary review and consideration of the personal restraint petition.

ANALYSIS

I.      Transfer from Superior Court under CrR 7.8

Major contends that the trial court erred in transferring his CrR 7.8 motion for a new trial to this court as untimely. The State concedes that the superior court erred in finding Major's motion was untimely, but avers that the court nevertheless properly transferred the motion by finding Major had failed to establish a substantial basis for relief.

A trial court must transfer a CrR 7.8 motion to the Court of Appeals unless it finds that the motion is not time barred, and either the defendant has made a substantial showing that they are entitled to relief or resolution of the motion requires a factual hearing. CrR 7.8. This court will remand the petition if the superior court clearly erred in transferring the CrR 7.8 motion. RAP 16.8.1(c) (emphasis added). A superior court must "meaningfully engage" in its transfer analysis. In re Pers. Restraint of Ruiz-Sanabria, 184 Wn.2d 632, 639–40, 362 P.3d 758 (2015).

We review a trial court's ruling on a CrR 7.8 motion for abuse of discretion. See e.g., State v. Crawford, 164 Wn. App. 617, 621, 267 P.3d 365 (2011); State v. Robinson, 193 Wn. App. 215, 217, 374 P.3d 175 (2016); State v. Zavala-Reynoso, 127 Wn. App. 119, 122, 110 P.3d 827 (2005). A trial court abuses its discretion when its decision is based on untenable grounds or for untenable

reasons. Robinson, 193 Wn. App. at 217–18 (citing State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

Here, the parties agree that Major's motion was timely and the superior court erred in finding otherwise. However, the court also made an express finding that Major had failed to make a substantial showing that he was entitled to relief. The form order used by the superior court contains two boxes separated by "OR;" one stating that the defendant's motion is time-barred, the other stating that "[t]he defendant's motion is not time-barred by RCW 10.73.090, but the defendant has not made a substantial showing that he or she is entitled to relief and resolution of the defendant's motion will not require a factual hearing." Because the second option on the form begins by stating that the motion is not time-barred, and the court believed that it was, it is clear why the court would not check both boxes despite finding two separate bases for transfer.

While the court erred in finding Major's motion was untimely, it properly transferred the motion to this court based on its finding that Major had failed to make a substantial showing that he is entitled to the relief sought. The trial court meaningfully engaged in its transfer analysis and its decision was not based on untenable grounds. As such, we need not remand the case to the superior court.

While Major asks us to remand his motion to the superior court so he may "further develop the factual record," we have before us all we need to determine the merits of Major's collateral attack. However, not every set of allegations, even those with merit, entitle a petitioner to a reference hearing. In re Pers. Restraint of Rice, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). A petitioner must state the facts

underlying their claim and the evidence available to support them. Id. 885–86. "Bald assertions and conclusory allegations will not support the holding of a hearing." Id. 886 (citing In re Pers. Restraint of Williams, 111 Wn.2d 353, 364–65, 759 P.2d 436 (1988)). A reference hearing will not be granted to determine whether a petitioner has met their evidentiary burden, rather the purpose "is to resolve genuine factual disputes." Rice, 118 Wn.2d at 886. If the allegations are based on facts not in the record, "the petitioner must demonstrate that he has competent, admissible evidence to establish" those facts. Id.

Major's motion is primarily based on the allegation that Washington authored a second report summarizing an interview with the victim's parents wherein they indicated that G.W. told them that he received hickeys from "a girl in Tacoma." His motion establishes that Major believes this second report demonstrates that G.W. was sexually involved with at least one other person during the time of the allegations as to Major and that Washington was not a credible witness, having drafted inconsistent reports. In support of this assertion as to a second report by Washington, Major included a letter from the SPD stating that the department had a "responsive" record to Major's public disclosure request. However, Major failed to attach the actual document SPD determined was responsive, despite this court permitting an extension of time in part for Major to submit that record.

Major's second allegation is that the State disclosed an altered audio and transcript of a police interview with G.W., alleging that he received a different transcript in response to his public disclosure request. Again, Major fails to meet

his evidentiary burden of showing how the transcript is different; providing only his own bare conclusory allegations that the transcripts are inconsistent. Major's bald assertions of fabricated evidence are not sufficient to demonstrate an entitlement to a reference hearing. Accordingly, we decline to remand the matter to the superior court and will instead reach the merits of Major's petition.[2]

II.      Review of the Merits of the Personal Restraint Petition

To succeed in a personal restraint petition, a petitioner must show a claimed constitutional error caused substantial and actual prejudice by a preponderance of the evidence. Id. at 884; In re Pers. Restraint of Cook, 114 Wn.2d 802, 810, 792 P.2d 506 (1990). "Unless a petitioner can make a prima facie showing of such prejudice, his petition will be dismissed." Cook, 114 Wn.2d at 810. Again, "[b]ald assertions and conclusory allegations" are not sufficient to meet this burden. Rice, 118 Wn.2d at 886. Petitioners seeking collateral relief "are in a significantly different situation than a person facing trial" and face a heavy burden. State v. Riofta, 166 Wn.2d 358, 369, 209 P.3d 467 (2009) (citing Schlup v. Delo, 513 U.S. 298, 326 n.42, 115 S. Ct. 851 (1995)).

A.      Alleged Discovery Violations

Major alleges that the prosecution wrongfully withheld favorable evidence in violation of its duty under Brady v. Maryland[3] by failing to disclose 1) a separate report by Washington and 2) an un-altered police interview of the victim.

---

[2] Major also asks that the matter be assigned to a different judge on remand. Because we reach the merits of his personal restraint petition, we need not address this request.

[3] 373 U.S. 83, 87, 83 S. Ct. 1194, 1197 (1963).

Under Brady, a prosecutor's failure to disclose evidence favorable to the accused violates due process if that evidence is material to guilt or punishment. Id. For a successful Brady claim, a defendant must show that the omission deprived them of a fair trial. State v. Benn, 120 Wn.2d 631, 650, 845 P.2d 289 (1993) (citing United States v. Bagley, 473 U.S. 667, 675, 105 S. Ct. 3375 (1985)). The defendant must show that the evidence puts "the whole case in such a different light as to undermine confidence in the verdict," and that in absence of disclosure the defendant did not receive a "fair trial resulting in a verdict worthy of confidence." Strickler v. Greene, 527 U.S. 263, 289–90, 119 S. Ct. 1936 (1999); see also In re Pers. Restraint of Delmarter, 124 Wn. App. 154, 167, 101 P.3d 111 (2004) ("prejudice occurs if there is a reasonable probability that . . . the result of the proceeding would have been different.").

First, Major alleges that Washington authored a second report that contained information regarding an interview with G.W.'s parents that would contradict Washington's report which was disclosed in discovery, as well as trial testimony from Washington, G.W., and G.W.'s mother. Major's Brady claim suffers from several fatal issues. Most critically, Major provides no evidence of a second police report authored by Washington other than a letter from the SPD that only states that it has "responsive records" to Major's public records request and a partial transcript of a defense interview where Washington stated his report contained a statement about "a girl in Tacoma." Major was able to question Washington about this discrepancy during trial and use the inconsistent statements as impeachment evidence. Washington admitted on the stand he had made a

mistake, and Major thoroughly cross-examined Washington about the ability to change or delete from reports at any time. Major also questioned G.W. at trial about the girl in Tacoma and the romantic relationship that may have existed between them.

Because of Major's opportunity to cross-examine Washington and G.W. about the "girl in Tacoma," the discrepancies in Washington's written statement and testimony, and the ability to change police reports, Major fails to demonstrate he was deprived of a fair trial by suppression of the evidence—if it existed in the first place.

Likewise, Major fails to meet his evidentiary burden to show that the audio and transcript of the police interview with G.W. was in fact altered. Further, he has not demonstrated that omission of any such evidence related to the audio and transcript deprived him of a fair trial.

B.    Plea Negotiations and Brady Waiver

Major alleges in his motion for a new trial that the State improperly offered to dismiss the case against him if he waived his right to favorable evidence under Brady and frames this offer as a violation of his due process rights under the United States and Washington State constitutions.

To succeed in a personal restraint petition, a petitioner must allege the violation of a constitutional right and prejudice. Rice, 118 Wn.2d at 884. In United States v. Ruiz, the United States Supreme Court held that Brady rights, like other trial rights, may be waived in plea bargaining so long as the waiver is made knowingly, intelligently, and with sufficient awareness. 536 U.S. 622, 628–29, 122

S. Ct. 2450 (2002). A year later, our state Supreme Court held that "[t]he theoretical basis for all plea bargaining is that defendants will agree to waive their constitutional rights," and a plea agreement contingent on the waiver of a constitutional right "does not, by itself, violate due process." State v. Moen, 150 Wn.2d 221, 230–31, 76 P.3d 721 (2003).

Major's assertion that the prosecution offered to dismiss the charges in exchange for a waiver of his Brady rights is supported only by his own affidavit and a trial transcript wherein he informed the trial court of the offer. But even if the prosecution had made a plea offer contingent on Major's waiver of his Brady rights, Moen holds that would not violate his constitutional rights.

C.     The State's Purported Use of False or Fabricated Evidence

Major next alleges that the State knowingly used false and/or fabricated evidence to prosecute him without probable cause in violation of his due process rights.

A conviction obtained through the use of false evidence, known to be false by the state, violates the due process clause of the 14th Amendment of the United States Constitution. Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173 (1959). Likewise, when the State allows false evidence "to go uncorrected when it appears," the defendant's due process rights are violated. Id. False evidence includes evidence directly related to the defendant's guilt and issues bearing on credibility of witnesses. Id. (citing New York v. Savvides, 1 N.Y.2d 554, 557, 136 N.E.2d 853, 854–55 (1956)). However, "[m]ere inconsistency between witness' testimony is not necessarily perjury, and not every contradiction is material."

United States v. Martin, 59 F.3d 767, 770 (8th Cir. 1995) (quoting United States v. Nelson, 970 F.2d 439, 443 (8th Cir. 1992)).

In State v. Cohen, a prosecuting attorney advised a witness he was not going to charge her with possession of marijuana found on her person "because of the seriousness of the murder case and her apparent reluctance to testify." 19 Wn. App. 600, 609, 576 P.2d 933 (1978). The court declined to reverse because the defendant failed to demonstrate the testimony was sufficiently material, nor the error sufficiently prejudicial. Id. at 612. A defendant is entitled to a new trial based on false testimony if the uncorrected false testimony "could . . . in any reasonable likelihood have affected the judgment of the jury." Napue, 360 U.S. at 271.

Major avers that four separate pieces of false testimony were solicited or left uncorrected by the State. First, that G.W.'s hickeys were caused by "a girl down in Tacoma" and that "he did not have sex" with Major. Second, that Washington prepared a second case investigation report summarizing statements by G.W.'s parents that was inconsistent with the report Major received in discovery. Third, that Washington falsely testified at a suppression hearing that he did not wrongfully search Major's mailbox. Fourth, that property manager Allyson Hubner falsely testified she had personally met Major in October 2015 and made an in-court identification based on that alleged falsehood.

First, Major previously brought an allegation of false testimony by G.W. to the court's attention during trial. The trial court found no evidence of intentionally sworn perjury. Additionally, Major had an opportunity to cross-examine G.W. about the inconsistent statements and introduced them into evidence. Major

brings forward no other evidence that G.W.'s inconsistent statements were known to be false testimony solicited or uncorrected by the State. Rather, the record before us demonstrates mere inconsistencies that Major was able to use in impeaching G.W.'s credibility.

Likewise, Major had an opportunity to question Washington regarding his inconsistent statements about "a girl in Tacoma" which Major asserts were missing from Washington's case investigation report. At trial, Washington admitted he was mistaken about the summary referencing "a girl in Tacoma" and misspoke during the defense interview. Washington explained that he was mistaken about the word "Tacoma." Major was able to impeach Washington's credibility based on that mistake and question him about the ability to change case investigation reports at any time. As evidence that this testimony was false and Washington's case investigation report was fabricated, Major submitted only the letter from the SPD stating there is a "Case Investigation Report" that it determined was responsive to Major's public disclosure request. Again, Major did not submit the actual document itself to the trial court, or provide it to this court in the record on appeal, despite this court granting an extension of time for Major to gain access to the report by paying the public disclosure fee. This is not sufficient to demonstrate the State knowingly solicited or failed to correct false testimony. Even if Major could prove the testimony was false, he does not show that the testimony had a reasonable likelihood of impacting the outcome of the trial, particularly after his impeachment of Washington on this issue.

Additionally, Major does not establish that Washington testified falsely during the hearing on defense motion to suppress under CrR 3.6. Again, he relies only on his own bare allegations that Washington's testimony was false and that the State knew it was false.

Finally, Major alleges that Hubner falsely testified to personally meeting Major in October 2015. Hubner, the property manager where Major resided in October 2015, testified that she met him outside the property and came into contact with him a handful of times around that same time. On that basis, the court allowed Hubner to make an in-court identification of the defendant. Again, Major's only evidence that Hubner testified falsely is his own affidavit stating he had never met her. This is insufficient to demonstrate that the State knowingly solicited or failed to correct false testimony by Hubner.

Major fails to meet his burden to demonstrate that any of the four pieces of testimony were false or that the State knew the testimony was false. "[B]ald assertions and conclusory allegations" are insufficient to demonstrate an entitlement to relief in a personal restraint petition. Rice, 118 Wn.2d 886. Major's own affidavits and assertions of false and fabricated evidence are not sufficient to establish an entitlement to relief on this ground.

III.  Statement of Additional Grounds for Review

Finally, Major provided a Statement of Additional Grounds for Review (SAG) and asserts that the State mischaracterized photos of Major as child pornography and delayed disclosure of the photographs, depriving him of a meaningful opportunity to investigate the images, object to their use, or effectively cross-

examine witnesses about the images. Major alleges that this constitutes prosecutorial misconduct.

As a general rule, in order to preserve error, a party "must call the alleged error to the court's attention at a time when the error can be corrected." State v. Fagalde, 85 Wn.2d 730, 731, 539 P.2d 86 (1975); see also State v. Mounsey, 31 Wn. App. 511, 525, 643 P.2d 892 (1982) (holding that the defendant waived his right to objection on appeal because he failed to object at trial to evidence admitted in violation of CrR 4.7). A party's failure to raise an issue at trial waives the issue on appeal "unless the party can show the presence of a 'manifest error affecting a constitutional right.'" State v. Robinson, 171 Wn.2d 292, 304, 253 P.3d 84 (2011) (internal quotation marks omitted) (quoting State v. Kirwin, 165 Wn.2d 818, 823, 203 P.3d 1044 (2009)). An attorney cannot remain silent during trial and later raise objections on appeal—"neither may a pro se defendant." State v. Hoff, 31 Wn. App. 809, 812, 644 P.2d 763 (1982). "In short, a pro se defendant is simply not entitled to special consideration." Id.

On December 4, 2018, prior to the jury entering the courtroom for the day, the State provided Major with Exhibit 9, a summary of the extraction report for texts between G.W. and Major. The State informed the court that the exhibit included approximately twelve images, noting its belief that only three of those images constituted child pornography.[4] Major stated that he had not reviewed any of the

---

[4] Under State v. Boyd, the State may reasonably restrict the dissemination of evidence which may constitute child pornography without conflicting with its disclosure obligations under CrR 4.7. 160 Wn.2d 424, 158 P.3d 54 (2007).

twelve images, and requested that the State make them available prior to the exhibit's admission.

The State responded that several months ago the prosecution had informed Major he would have to arrange with the SPD to view the images because they were all in the exclusive custody of law enforcement. The State then agreed to make the images available for Major to view during the morning recess. The trial court took a morning recess for Major to view the images and made it clear that the court would also make the images available for a longer period of time during a later recess. During witness testimony, the images from Exhibit 9 were introduced and Major had five separate opportunities to object to the admission of each image. Each time, Major stated he had no objection. Additionally, Major actually used the exhibits himself in his cross-examination of Washington.

Major's contention in his SAG that the entirety of the twelve images were wrongfully characterized as child pornography is clearly contradicted by the record before us, where the State explicitly stated that "only three" out of twelve images constituted child pornography. Major additionally had occasion months before trial, and during trial, to view the images and object to their use or admission. Further, despite his claims to the contrary, Major had five separate opportunities to object to the use of the images and expressly stated each time that he did not object. In his SAG, he claims that he was so disturbed by this perceived discovery irregularity that he "repeatedly stated 'no' as in 'no these cannot be photographs of me,'" but admits that "only the words 'no' came from [his] mouth." Regardless of what his internal thought process may have been at trial, the record is clear that the court

properly provided him an opportunity to object to each of the photographs he now challenges in this petition. The trial transcript demonstrates only that his unequivocal response each time was "no." In his own cross-examination, he then proceeded to make use of the same images he now claims prejudiced him at trial. As such, Major has waived this issue.

This court has three options when reviewing a personal restraint petition: 1) dismiss the petition; 2) transfer to a superior court for a reference hearing or determination on the merits; 3) grant relief. In re Pers. Restraint of Yates, 177 Wn.2d 1, 17, 296 P.3d 872 (2013). "Dismissal is necessary where a petitioner fails to make a prima facie showing of actual prejudice for alleged constitutional errors." In re Pers. Restraint of Yates, 177 Wn.2d 1, 17–18, 296 P.3d 872 (2013) (citing Cook, 114 Wn.2d at 813–14).

Here, Major fails to meet his evidentiary burden in each of the alleged constitutional errors, relying only on his own affidavits, bald assertions and conclusory allegations. Because Major has not made a prima facie showing of actual prejudice, his personal restraint petition is denied.

_____

WE CONCUR:

_____
Mann, C.J.

_____
Verellen, J.